RICHARD G. ANDERSON *et al.*, Indiv. and as Trustees under the Richard and Ann Anderson Charitable Trust, Plaintiffs-Appellants, v. FINANCIAL MATTERS, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—95—1444

Opinion filed November 7, 1996.

Thomas P. Ward, Marc L. Fogelberg, and Antonia S. Pritchard, all of McBride, Baker & Coles, of Chicago, and James S. Tukesbrey, of Law Office of James S. Tukesbrey, of Waukegan, for appellants.

Phillip M. Goldberg, of Coffield, Ungaretti & Harris, of Chicago, for appellees Financial Matters, Inc., and Alan M. Misale.

Stephen C. Voris and Tara A. Moran, both of Burke, Warren & MacKay, P.C., of Chicago, for appellees Shirley A. McKinney and Thomas James Associates, Inc.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs Richard G. Anderson and Ann T. Anderson appeal three orders of the circuit court of Lake County. The first order, entered on October 13, 1993, granted defendants Thomas James Associates, Inc. (Thomas James), and Shirley A. McKinney's motion to stay the judicial proceedings and to compel arbitration. The second order, entered on May 18, 1995, entered judgment in favor of Thomas James and McKinney based on an earlier arbitration award. The third order, entered on October 17, 1995, granted the motion for summary judgment of defendants Financial Matters, Inc. (Financial Matters), and Alan M. Misale.

## BACKGROUND

The following brief summary of the facts is taken from the record. On June 16, 1993, plaintiffs filed a complaint against Financial Matters, Misale, Thomas James, McKinney, and Equitable Life Insurance Company of America (Equitable). The complaint contained six counts.

The complaint alleged the following facts common to all counts. Misale has known plaintiffs since the 1980s when he was a salesman for plaintiffs' insurance agent. Early in 1992, Misale, who at this time was employed by Financial Matters, proposed that plaintiffs change their retirement and estate plan. Misale proposed that plaintiffs sell their stock in R.R. Donnelley & Sons (Donnelley stock). A substantial portion of the proceeds of this sale would be donated to a charitable remainder unit trust (CRUT). The CRUT would then purchase other securities which would generate a substantially higher income than the dividends plaintiffs received from the Donnelley stock. The income earned by these securities would be paid to plaintiffs on a current basis until they died, it would equal 10% of the fair market value of the CRUT, and it would average at least $75,000 per year through 2003. When plaintiffs died, the remaining assets in the CRUT would fund a charitable foundation. The beneficiary of this charitable foundation apparently was plaintiffs' son.

After further investigation, Misale proposed a slightly modified plan. This plan would create a wealth replacement trust, which in turn would purchase a life insurance policy on Mrs. Anderson and was payable to plaintiffs' son on her death. The plan would also create the CRUT. The CRUT, which would still be funded by the proceeds of the sale of the Donnelley stock, would invest in debt secu-

rities. One-half of these securities would consist of zero-coupon United States Treasury bonds, which would have a maturity value in 2003 equal to the value of the Donnelley stock originally donated to the CRUT. The remaining securities would consist of securities that were paying and would continue to pay a current yield greater than 10% of the fair market value of the CRUT's assets. This yield would be paid to plaintiffs.

In connection with the purchase of these latter securities, Misale introduced plaintiffs to McKinney, a registered broker at Thomas James, a securities brokerage firm. McKinney recommended the purchase of income-only stripped mortgage backed securities certificates (I/O FNMA Strips). I/O FNMA Strips are not government bonds. They are derivatives based on specified pools of mortgage loans held by the Federal National Mortgage Association (FNMA).

From April through June 1992, McKinney and Misale made several representations regarding the I/O FNMA Strips. McKinney and Misale generally represented that investment in I/O FNMA Strips would produce an income for plaintiffs in excess of 10% of the value of the CRUT. This representation was based on the assumption that the I/O monthly payments made to the FNMA pool would not decline by more than 1% each month.

In reliance on these representations, plaintiffs established the CRUT, which they funded with the Donnelley stock. At this time, the stock had a market value in excess of $750,000. Upon Misale's recommendation, the Donnelley stock was sold and the proceeds invested by the CRUT. The sum of $329,000 was invested in zero-coupon United States Treasury bonds that, if held to the maturity date in 2003, would return a single payment of $750,000. The sum of $425,000 was invested in I/O FNMA Strips in interest trust 29—2. Plaintiffs also purchased a life insurance policy on Mrs. Anderson. Although plaintiffs purchased the securities through Thomas James, the purchases were cleared through RAF Financial Corporation (RFC), Thomas James' clearing agent.

According to plaintiffs, Misale and McKinney intentionally or recklessly misrepresented or omitted to state, *inter alia*, that the I/O monthly payments made to the FNMA pool had been declining at a rate much greater than 1% per month for many months before June 1992. The decline had in fact exceeded 4.5% per month in each of March, April, and May 1992. In January or February 1993, plaintiffs discovered that the I/O FNMA Strips had an apparent market value of approximately one-half of the amount that they paid for them. In March 1993 plaintiffs liquidated interest trust 29—2 for a significant loss.

Based on these allegations, count I of plaintiffs' complaint alleged violations of section 12 of the Illinois Securities Law of 1953 (815 ILCS 5/12 (West 1994)); count II alleged common-law fraud; count III alleged gross violation of trust and confidence; count IV alleged a breach of contract of the life insurance policy; count V alleged promissory estoppel; and count VI alleged an implied right of recovery under the life insurance policy. Counts I, II, and III were alleged against Financial Matters, Misale, Thomas James, and McKinney, jointly and severally.

On August 20, 1993, Thomas James and McKinney filed a motion to stay the judicial proceedings and to compel arbitration of the claims asserted against them in plaintiffs' complaint. According to the motion, plaintiffs had signed a document entitled "clearing account agreement." Paragraph 10 of the agreement, entitled "Arbitration," provided that all controversies which may arise between plaintiffs and RFC and "the broker or the broker's employees" shall be determined by arbitration. It also stated:

"ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 7 [Colorado] HEREOF, BEFORE AN ARBITRATION FACILITY PROVIDED BY THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ('NASD') ***.

* * *

THE AWARD IN SUCH ARBITRATION PROCEEDING SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION. THE CONTROVERSIES AND DISPUTES WHICH ARE THE SUBJECT OF THIS ARBITRATION AGREEMENT INCLUDE, BUT ARE NOT LIMITED TO, DISPUTES UNDER FEDERAL AND STATE LAWS, INCLUDING SECURITIES LAWS, AND DISPUTES UNDER COMMON LAW."

Based on this agreement, Thomas James and McKinney argued that plaintiffs were required to submit their claims against them to arbitration under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (1988)). On October 13, 1993, the trial court entered an order granting the motion. The order further provided that the claims against Thomas James and McKinney were dismissed and that it retained personal jurisdiction over them solely for the purpose of enforcing an arbitration award that may thereafter be awarded.

On February 28, 1994, plaintiffs filed their first amended complaint. As with the original complaint, this complaint contained six counts; each count's allegations mirrored those contained in the original complaint.

On November 17, 1993, plaintiffs filed a statement of claim (NASD claim) against Thomas James and McKinney with the National Association of Securities Dealers (NASD). The NASD claim had three counts, which were essentially identical to the first three counts of plaintiffs' original complaint and first amended complaint. The only significant difference was that the only named defendants in the NASD claim were Thomas James and McKinney.

On October 6, 1994, plaintiffs filed a second amended complaint. The complaint contained three counts. These counts were essentially identical to the first three counts of the original complaint and first amended complaint. Like the first three counts in the earlier complaints, all three counts in this complaint were directed against Financial Matters, Misale, Thomas James, and McKinney, jointly and severally. Equitable was not named as a defendant. For purposes of convenience, we will refer to the second amended complaint simply as "the complaint."

From January 11 to 13, 1995, and February 28, 1995, the NASD arbitration panel (NASD panel) conducted a hearing on plaintiffs' NASD claim. At the beginning of the hearing the NASD panel stated that all issues in the NASD claim were being put to the panel. Testimony was heard from nine witnesses, including, *inter alia*, plaintiffs, plaintiffs' expert witness, Misale, McKinney, and defendants' expert witnesses. At the end of the hearing, plaintiffs' counsel stated on the record that his clients had presented all the evidence they had and that they had had an equal opportunity to do so.

On April 7, 1995, the NASD panel issued a final written decision. The decision stated that, after considering the pleadings, the testimony, and the evidence presented, it had decided in full and final resolution of the issues submitted for determination that plaintiffs' NASD claim was "denied and dismissed." No findings of fact or explanations were included in the award. Plaintiffs did not attempt to vacate, modify, or appeal the award. On May 18, 1995, Thomas James and McKinney moved the trial court to confirm the award, which it did that same day.

On August 8, 1995, Financial Matters and Misale filed a motion for summary judgment. Financial Matters and Misale argued that the NASD award and the ensuing judgment collaterally estopped plaintiffs from relitigating the issues that had been adjudicated by the NASD panel. On October 17, 1995, the trial court granted the motion for summary judgment. This appeal followed.

## DISCUSSION

Plaintiffs have three principal contentions on appeal: (1) the trial

court erred in holding that the doctrine of collateral estoppel barred their claims against Financial Matters and Misale; (2) the trial court erred in holding that the doctrine of *res judicata* barred their claims against Financial Matters and Misale; and (3) the trial court erred in granting Thomas James and McKinney's motion to stay the judicial proceedings and to compel arbitration. We will address each contention separately.

■ Before doing so, however, we first address plaintiffs' motion to supplement the record on appeal, which we ordered taken with the case. Pursuant to Supreme Court Rule 329 (134 Ill. 2d R. 329), plaintiffs request leave to supplement the record with exhibits that were admitted into evidence by the NASD panel during the arbitration hearing. Supreme Court Rule 329 (134 Ill. 2d R. 329) provides that a party may supplement the record on appeal to include omissions, correct errors, and settle controversies as to whether the record accurately reflects what occurred in the trial court. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 444 (1995). However, Rule 329 allows supplementation only with documents that were actually before the trial court. *Albergo*, 275 Ill. App. 3d at 444. In the present case, plaintiffs have not shown that the exhibits were before the trial court. We therefore deny their motion. See *Albergo*, 275 Ill. App. 3d at 444.

I

■ Plaintiffs' first contention is that the trial court erred in holding that the doctrine of collateral estoppel barred their claims against Financial Matters and Misale. Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294 (1995). The requirements for application of collateral estoppel are (1) that the issue decided in the prior adjudication is identical to the one presented in the case in question; (2) that there was a final judgment on the merits in the prior adjudication; (3) that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) that the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 152 (1994); *Harmon v. LaDar Corp.*, 200 Ill. App. 3d 79, 83-84 (1990).

In the instant case, plaintiffs maintain that the first three requirements are not present. Plaintiffs argue that (1) the issues decided by the NASD panel are not identical to the issues raised in the complaint against Financial Matters and Misale; (2) the NASD

award was not a final judgment on the merits; and (3) Illinois has not adopted the doctrine of nonmutual defensive collateral estoppel.

■ Preliminarily, we note that this is an appeal of a summary judgment entered pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1994)). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). In cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza*, 165 Ill. 2d at 113.

Plaintiffs initially argue that the issues decided by the NASD panel are not identical with the issues raised in their complaint against Financial Matters and Misale. Plaintiffs essentially argue that Financial Matters and Misale cannot establish with clarity and certainty the precise issues determined by the NASD panel. Plaintiffs reason that, because the NASD panel made no findings on contested factual issues, it is impossible to ascertain whether the issues it determined are identical to the issues raised by their complaint against Financial Matters and Misale.

Financial Matters and Misale respond that the issues decided by the NASD panel are identical to those raised in the complaint. They argue that the NASD claim alleged the same facts and causes of action as those raised in the complaint, the only difference being that, whereas the NASD claim named only Thomas James and McKinney as defendants, the complaint named Financial Matters, Misale, Thomas James, and McKinney as defendants. Given these similarities and relying on the general rule that an arbitration award need not set out specific facts (*Horwitz, Schakner & Associates, Inc. v. Schakner*, 252 Ill. App. 3d 879, 884 (1993)), Financial Matters and Misale reason that the issues decided by the NASD panel must have been identical to those raised by the complaint.

■ The doctrine of collateral estoppel applies only to controlling facts or questions material to the determination of both causes. *Congregation of the Passion, Holy Cross Province*, 159 Ill. 2d at 153-54. A judgment in a prior case operates as an estoppel only as to the point or question *actually litigated and determined* and not as to other matters which might have been litigated and determined. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 252 (1984). In other words, a judgment is conclusive in a subsequent case on any issue actually litigated and determined if its determination was essential to that judgment. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 661 (1989). A court cannot invoke the doctrine of collateral estoppel on pure speculation as to what the trial court

found in the prior case. *LaHood v. Couri*, 236 Ill. App. 3d 641, 646 (1992).

Accordingly, in order for a former judgment to operate as an estoppel, there must have been a finding of a specific, material, and controlling fact in the former case, and it must conclusively appear that the issue of fact was so in issue that it was necessarily determined by the court rendering the judgment. *Lange v. Coca-Cola Bottling Co. of Chicago, Inc.*, 44 Ill. 2d 73, 75 (1969); *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1082 (1991). If uncertainty exists because more than one distinct factual issue was presented in the prior case, estoppel will not be applied. *Progressive Land Developers, Inc. v. Exchange National Bank*, 266 Ill. App. 3d 934, 944 (1994); *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine*, 118 Ill. App. 3d 782, 785 (1983). Moreover, the party asserting the estoppel bears the heavy burden of showing with certainty that the identical and precise issue sought to be precluded in the later adjudication was decided in the previous adjudication. *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010, 1014 (1991). To speculate on the grounds for the prior judgment would be to remove this burden. *LaHood*, 236 Ill. App. 3d at 646.

■ Applying these principles to the case at bar, we conclude that Financial Matters and Misale have not proved with certainty that the identical and precise issues raised by the complaint were actually decided by the NASD panel. The NASD award merely stated that plaintiffs' NASD claim, which named only Thomas James and McKinney as defendants, was denied and dismissed. It contained no specific findings. Although the NASD claim and the complaint alleged nearly identical facts and causes of action, we simply do not know whether the issues raised by the complaint were actually determined by the NASD panel.

For example, although the NASD award could have resulted from a finding that neither McKinney nor Misale misrepresented the investment risks to plaintiffs, it could have also resulted from a finding that only Misale misrepresented certain investments risks. Similarly, although the NASD award could have resulted from a finding that plaintiffs were not injured by McKinney's misrepresentations, such a finding does not mean that plaintiffs were not injured by Misale's misrepresentations. As a further example, the NASD award could have resulted from a finding that Thomas James and McKinney did not owe a duty to plaintiffs while not even concerning itself with whether Financial Matters and Misale did owe a duty to plaintiffs.

The point is that we must speculate as to what the NASD panel

found when it issued the award. Illinois law, however, is clear that we cannot speculate on such matters—we must be certain as to the issues that were actually and necessarily decided in the prior case. See, *e.g.*, *Housing Authority*, 101 Ill. 2d at 252; *Progressive Land Developers, Inc.*, 266 Ill. App. 3d at 944. Because we are not certain as to the issues actually and necessarily decided by the NASD panel, collateral estoppel does not apply. See *Case Prestressing Corp.*, 118 Ill. App. 3d at 785-86 (where issues of both liability and damages are sent to jury and jury simply returns a general verdict, collateral estoppel will not apply because it is not certain whether the jury found against the plaintiff on liability, on damages, or on both). Accordingly, we conclude that the trial court erred in granting Financial Matters and Misale's motion for summary judgment. As a result, we need not address plaintiffs' remaining arguments under this contention.

## II

■ Plaintiffs' second contention is that the trial court erred in holding that the doctrine of *res judicata* barred their claims against Financial Matters and Misale. We need not address this contention, however, because our analysis of the first contention renders this contention moot. Moreover, the trial court did not hold, and Financial Matters and Misale have not argued, either on appeal or in their motion for summary judgment, that the doctrine of *res judicata* barred plaintiffs' claims.

## III

Plaintiffs' third contention is that the trial court erred in granting Thomas James and McKinney's motion to stay the judicial proceedings and to compel arbitration. On October 13, 1993, the trial court entered an order that granted Thomas James and McKinney's motion to stay the judicial proceedings and to compel arbitration. On May 18, 1995, the trial court entered an order that denied and dismissed with prejudice plaintiffs' claims against Thomas James and McKinney. Plaintiffs argue that the trial court erred in entering the October 13, 1993, order, which severed their claims against Thomas James and McKinney from their claims against Financial Matters and Misale.

Before addressing the merits of this contention, we must first address Thomas James and McKinney's motion to dismiss plaintiffs' appeal of the October 13, 1993, order, which we ordered taken with the case. Thomas James and McKinney argue that we lack jurisdiction to hear plaintiffs' appeal of the October 13, 1993, order. They argue that an order granting a motion to compel arbitration and to stay the

judicial proceedings is appealable only under Illinois Supreme Court Rule 307(a) (155 Ill. 2d R. 307(a)), which provides that the appeal must be perfected within 30 days from the entry of the order. Because plaintiffs did not perfect the appeal of the October 13, 1993, order within 30 days, they argue that this court lacks jurisdiction to hear that portion of plaintiffs' appeal pertaining to the order.

■ The jurisdiction of this court is limited to the review of appeals from final judgments or orders, subject to statutory or supreme court exceptions. *In re Petition to Incorporate the Village of Greenwood*, 275 Ill. App. 3d 465, 469 (1995). Interlocutory appeals as of right, as provided in Supreme Court Rule 307(a), are one such exception. See 155 Ill. 2d R. 307(a). Rule 307 provides in pertinent part:

> "(a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from an interlocutory order of court:
>
> (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction;
>
> * * *
>
> Except as provided in paragraph (b), the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal' conforming substantially to the notice of appeal in other cases." 155 Ill. 2d R. 307(a)(1).

A motion to compel or stay arbitration is analogous to a motion for injunctive relief. *Amalgamated Transit Union, Local 900 v. Suburban Bus Division of the Regional Transportation Authority*, 262 Ill. App. 3d 334, 337 (1994); *Robert A. Besner & Co. v. Lit America, Inc.*, 214 Ill. App. 3d 619, 623 (1991). Thus, an order granting a motion to compel or stay arbitration is an interlocutory order appealable under Rule 307(a)(1). *Amalgamated Transit Union, Local 900*, 262 Ill. App. 3d at 337; *Robert A. Besner & Co.*, 214 Ill. App. 3d at 623. A notice of interlocutory appeal must be filed within 30 days of such an order. 155 Ill. 2d R. 307(a)(1).

In the present case, the order granting Thomas James and McKinney's motion to compel arbitration and to stay the judicial proceedings was entered on October 13, 1993. This order was an interlocutory order under Rule 307(a)(1). See, *e.g.*, *Notaro v. Nor-Evan Corp.*, 98 Ill. 2d 268, 270-71 (1983) (order granting or denying a motion to compel arbitration and stay court proceedings or dismiss the lawsuit is appealable under Rule 307(a)(1)). Plaintiffs therefore could have filed a notice of interlocutory appeal within 30 days of that order.

However, the issue is not whether plaintiffs could have filed a notice of interlocutory appeal when the court issued the October 13,

1993, order, but whether they had to. In other words, does a party's failure to appeal an interlocutory order under Rule 307(a)(1) preclude our review of that order when a final judgment is entered in the case?

■ When analyzing a supreme court rule, we must ascertain and give effect to the supreme court's intent. *Kellett v. Roberts*, 276 Ill. App. 3d 164, 170 (1995). The same rules for statutory construction apply to supreme court rules. *Kellett*, 276 Ill. App. 3d at 170. Statutory construction begins with the plain meaning of the language employed and ends there when the meaning is clear. *Alpine Bank v. Yancy*, 274 Ill. App. 3d 766, 768 (1995). When the language of a supreme court rule is plain and unambiguous, courts will not read in exceptions, limitations, or other conditions. *People v. Daniels*, 172 Ill. 2d 154, 163 (1996).

Here, the language of Rule 307(a)(1) is plain and unambiguous: a party is not required to appeal a Rule 307(a)(1) interlocutory order in order to preserve later review of that order. Rule 307(a)(1) provides only that an appeal "may" be taken from an interlocutory order that grants a motion to compel arbitration or to stay the proceedings. 155 Ill. 2d R. 307(a)(1). As a rule of statutory construction, the word "may" is permissive or discretional as opposed to mandatory. *Alpine Bank*, 274 Ill. App. 3d at 768; *Lake States Engineering Corp. v. One Naperville Corp.*, 148 Ill. App. 3d 836, 841 (1986). Because Rule 307(a)(1) does not require a party to appeal the interlocutory order, a reviewing court may still review the merits of that order after a final judgment in the case is rendered and appealed from. *Alpine Bank*, 274 Ill. App. 3d at 768; see *People v. Franklin*, 159 Ill. App. 3d 56, 60 (1987).

■ Thus, while plaintiffs could have appealed the October 13, 1993, order within 30 days of its entry under Rule 307(a)(1), they were not required to do so. See *Alpine Bank*, 274 Ill. App. 3d at 768. Instead, plaintiffs waited to appeal until a final judgment disposing of all the parties and all the claims was rendered in the case—that is, the October 17, 1995, order granting Financial Matters and Misale's motion for summary judgment. As such, we have jurisdiction to consider the merits of the October 13, 1993, order. See *Alpine Bank*, 274 Ill. App. 3d at 768.

We are aware that other courts have apparently reached a contrary result. See, *e.g.*, *Hwang v. Tyler*, 253 Ill. App. 3d 43, 45-46 (1993); *Williams v. Nagel*, 251 Ill. App. 3d 176, 179 (1993); *Safeway Insurance Co. v. American Arbitration Ass'n*, 247 Ill. App. 3d 355, 358 (1993); *Robert A. Besner & Co.*, 214 Ill. App. 3d at 623; *Baird & Warner, Inc. v. Gary-Wheaton Bank*, 122 Ill. App. 3d 136, 138-39 (1984). However,

those cases neither considered the plain language of Rule 307(a) nor interpreted that language in accordance with accepted rules of statutory construction. We therefore decline to be guided by those cases to the extent they hold that the right to challenge a Rule 307(a)(1) order is permanently lost if a party does not appeal the order within 30 days.

In contrast, we believe our recent decision in *Alpine Bank*, a case cited by none of the parties, is persuasive. See *Alpine Bank*, 274 Ill. App. 3d at 768. In *Alpine Bank*, we applied established rules of statutory construction to Rule 307(a). After doing so, we held that a party does not have to appeal a Rule 307(a) interlocutory order to preserve later review of that order. *Alpine Bank*, 274 Ill. App. 3d at 768. In our opinion, this approach—which we follow here today—properly analyzed the jurisdictional scope of Rule 307(a) by considering its language in light of general principles of statutory construction.

We therefore turn to the merits of the contention. In granting Thomas James and McKinney's motion to stay the judicial proceedings and to compel arbitration, the trial court severed plaintiffs' claims against Thomas James and McKinney from their claims against Financial Matters and Misale. Plaintiffs argue that the trial court erred in doing so because (1) the arbitration agreement did not involve Financial Matters and Misale; (2) the claims against all of the parties were interdependent; and (3) arbitration would result in duplicative litigation with the possibility of inconsistent results. Plaintiffs cite *J.F. Inc. v. Vicik*, 99 Ill. App. 3d 815 (1981), for the proposition that judicial economy and the avoidance of inconsistent results require a trial court to deny a motion to compel arbitration.

The trial court did not err in severing the claims. The United States Supreme Court has held that "[u]nder the [Federal] Arbitration Act, an arbitration agreement *must be enforced* notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." (Emphasis added.) *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 74 L. Ed. 2d 765, 782, 103 S. Ct. 927, 939 (1983). The Supreme Court has also held that the Federal Arbitration Act requires courts to compel arbitration of pendent arbitrable claims, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 84 L. Ed. 2d 158, 163, 105 S. Ct. 1238, 1241 (1985).

We note that Illinois courts also hold that arbitration is a favored method of settling disputes in Illinois, and the policy favoring arbitration will not be ignored simply because multiple parties and claims

may be present. See *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 384 (1988); see, *e.g.*, *M.D. Building Material Co. v. 910 Construction Venture*, 219 Ill. App. 3d 509, 519 (1991) (rejecting "judicial economy argument" as a bar to the enforcement of valid arbitration agreements); *Atkins v. Rustic Woods Partners*, 171 Ill. App. 3d 373, 380 (1988) (noting that in general an arbitration agreement is enforceable despite the existence of claims by third parties or of pending multiparty litigation); *Diersen v. Joe Kiem Builders, Inc.*, 153 Ill. App. 3d 373, 377 (1987) (noting that the general rule in Illinois is that "arbitration agreements in multiparty litigation should be enforced despite the existence of claims which create the potential for duplicative proceedings"). We further note that *Vicik*, the case principally relied upon by plaintiffs, is inconsistent with prevailing case law, and Illinois courts have repeatedly criticized and distinguished it. See *M.D. Building Material Co.*, 219 Ill. App. 3d at 519; *Kurland Steel Co. v. Carle Foundation Hospital*, 185 Ill. App. 3d 624, 627-29 (1989); *Landmark Properties, Inc.*, 172 Ill. App. 3d at 384; *Geldermann, Inc. v. Mullins*, 171 Ill. App. 3d 255, 261 (1988); *Diersen*, 153 Ill. App. 3d at 377. We likewise choose not to follow *Vicik*.

In light of the foregoing cases, we conclude that the trial court did not err in granting the motion to stay the judicial proceedings and to compel arbitration. Although plaintiffs' argument is well taken, prevailing federal and state case law compelled the trial court to grant the motion and thereby sever the claims. Also, we affirm the May 18, 1995, order which entered judgment for Thomas James and McKinney based on the NASD award, because the trial court properly compelled arbitration and because plaintiffs do not otherwise explain why the trial court improperly entered that order. See 9 U.S.C. § 9 (1988); see also *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994) ("Unlike the usual civil appeal, where the successful party is usually defending the lower court's decision on the merits, an action for confirmation under 9 U.S.C. § 9 is intended to be a summary proceeding that merely makes the arbitrators' award a final, enforceable judgment of the court"); *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act").

## CONCLUSION

The judgment of the circuit court of Lake County is affirmed in part and reversed in part. Plaintiffs' motion to supplement the record

on appeal is denied. Thomas James and McKinney's motion to dismiss plaintiffs' appeal of the October 13, 1993, order is denied. The cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded; motion to supplement the record on appeal is denied; motion to dismiss appeal of the October 13, 1993, order is denied.

INGLIS and DOYLE, JJ., concur.