# Illinois Official Reports

## Appellate Court

---

### *County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184

---

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF BOONE, Plaintiff-Appellee, v. PLOTE CONSTRUCTION, INC., BELVIDERE MATERIALS, LLC, and CHICAGO LAND TITLE AND TRUST COMPANY, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-16-0184 |
| Filed<br>Rehearing denied | March 28, 2017<br>April 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 14-CH-170; the Hon. C. Robert Tobin III, and the Hon. Philip J. Nicolosi, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Warren R. Fuller, of Kelleher & Buckley, LLC, of North Barrington, for appellants.<br><br>Tricia L. Smith, State's Attorney, of Belvidere (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.


**OPINION**

¶ 1     Defendants, Plote Construction, Inc., Belvidere Materials, LLC, and Chicago Land Title and Trust Company, appeal an order of the circuit court of Boone County, holding them in indirect civil contempt for violating an injunctive order entered in favor of plaintiff, the County of Boone. Defendants argue that the injunctive order expired prior to the conduct that was the basis for the contempt finding and, alternatively, that plaintiff failed to prove that defendants' conduct violated the terms of the injunction. We reject these contentions and affirm.

¶ 2                             I. BACKGROUND

¶ 3     In March 2005, defendants, who were contract purchasers of property on which they desired to operate a quarry, sued plaintiff to challenge its prohibition on quarrying activities in the zoning district containing the property. In September 2005, plaintiff and defendants entered into a settlement agreement (the Settlement Agreement) in which plaintiff agreed to issue defendants a special-use permit for "the extraction of minerals and earth materials" from the property. Section 3(b) of the Settlement Agreement contained the following restriction on defendants' operating hours:

    "(b) The hours of operation for the quarrying activities to be conducted on the Subject Property shall be from 6:00 a.m. to 6:00 p.m. weekdays and Saturdays and there shall be no operations conducted on Sunday or legal holidays, *unless the County permits less restrictive hours and days of operations to other mining operations subject to its control in which event the less restrictive regulations shall apply to the Subject Property to the same extent and for the same periods as those which apply to such other mining operations.*" (Emphasis added.)

We refer to the italicized language as the "least restrictive hours" clause.

¶ 4     In June 2014, plaintiff enacted Ordinance No. 14-21 (the Ordinance) (Boone County Code of Ordinances No. 14-21 (eff. June 18, 2014)), which granted defendants "a special use for a quarry" on the property. The Ordinance specified "hours of operation for the quarrying activities to be conducted on the property." The hours were the same as those specified in the Settlement Agreement. Defendants operated the quarry under the name "Beverly Materials."

¶ 5     On August 21, 2014, plaintiff filed a complaint seeking preliminary and permanent injunctive relief barring defendants from operating the quarry outside the hours specified in the Ordinance. Four days later, plaintiff filed a motion for a temporary restraining order (TRO) and a preliminary injunction. Plaintiff alleged in the complaint and the motion that it had received numerous complaints of "quarrying activity outside the allowable hours of operation." In response to these complaints, one of plaintiff's building inspectors, Drew Bliss, conducted a site inspection of defendants' property on three separate dates in August 2014. On those dates, Bliss observed "quarrying activity *** being performed *** in violation of the Ordinance," namely outside the permitted hours. Plaintiff attached an affidavit from Bliss, who

averred that, on the three dates in August 2014, he observed "quarrying activity" taking place on defendants' property outside permitted hours. Bliss's affidavit did not specify the "quarrying activity" he observed. However, plaintiff also attached an August 13, 2014, letter from Bliss to defendants. In the letter, Bliss informed defendants that, at 7:06 p.m. on August 12, 2014, he observed a "front[-]end loader *** moving aggregate within the quarry." Bliss stated that he considered this activity to be "quarrying activity."

¶ 6    Plaintiff served defendants with copies of its pleadings and informed them of the date on which the motion for injunctive relief would be heard. Meanwhile, defendants moved to dismiss the complaint. In their motion, defendants alleged that the activity Bliss observed at defendants' quarry on the three dates in August occurred within the operating hours that plaintiff granted to another quarrying operation, Quality Aggregates. Therefore, according to defendants, the "least restrictive hours" clause in the Settlement Agreement applied and defendants were not in violation of the Ordinance.

¶ 7    On November 24, 2014, the trial court issued a memorandum of decision. The court began by noting that previously, on November 13, 2014, the court held a hearing on plaintiffs' motion for injunctive relief and defendant's motion to dismiss. The record contains no report of proceedings of the hearing. The court further stated in the memorandum that on November 13, it "entered oral rulings" on both motions and "advised the parties that [the court] would issue a memorandum of decision clarifying its basis for such rulings." Notably, the record contains no order from November 13 memorializing the oral rulings entered that day.

¶ 8    In the body of the memorandum, the court found that plaintiff satisfied the elements for a TRO. The court concluded the memorandum by stating: "Defendants' Motion to Dismiss is denied. Plaintiff's Motion for Temporary Restraining Order is granted." The court did not specify the conduct from which defendants were barred or specify a duration for the injunction.

¶ 9    Defendants did not take an immediate appeal from the November 2014 injunctive order. Instead, defendants filed (1) an answer to the complaint, (2) an affirmative defense based on the "least restrictive hours" clause, and (3) a "Counterclaim for Declaratory Judgment to Enforce [the Settlement Agreement]." Plaintiff moved to dismiss the affirmative defense and the counterclaim, but the court denied the motion.

¶ 10    In June 2015, plaintiff filed a petition for a rule to show cause for indirect civil contempt. Plaintiff alleged that defendants willfully violated the November 2014 injunctive order by conducting quarrying activities beyond the permitted hours of operation, as observed by Bliss. Plaintiff attached an affidavit from Bliss, who averred that, on three separate dates in June 2015, he observed vehicles enter the quarry, receive loads of aggregate, and leave. Bliss referred to these activities as "quarrying activities."

¶ 11    In July 2015, defendants filed a motion to strike the petition, under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014) (dismissal for failure to state a cause of action upon which relief can be granted)). They argued that the loading and hauling of materials, as observed by Bliss, did not of themselves constitute "quarrying activities" as contemplated in the Ordinance.

¶ 12    On October 26, 2015, the trial court held an evidentiary hearing on the petition for a rule to show cause and the motion to strike the petition. Plaintiff's sole witness at the hearing was Bliss, who related his investigation of numerous complaints that defendants were engaging in quarrying activities prior to 6 a.m., in contravention of the Ordinance. Bliss described three separate dates, June 11, 17, and 18, 2015, on which he positioned himself off-site and observed

activities within the quarry prior to 6 a.m. On these dates, Bliss saw heavy trucks enter the quarry and receive loads of aggregate from front-end loaders before leaving the quarry. Bliss saw some of the trucks pause at the quarry's scale house before leaving.

¶ 13    Following Bliss's testimony, defendants called David Zumbrunn as their sole witness. Zumbrunn was the general manager of Beverly Materials. Zumbrunn stated that, on his reading, the Ordinance contained no definition of "quarrying activities." Zumbrunn also had not seen "any portion of a county ordinance which identifies loading trucks as quarrying activities."

¶ 14    In November 2015, while the petition and the motion to strike were under advisement, defendants moved for leave to file another affirmative defense. Defendants' defense was that the November 2014 injunction expired prior to the dates in June 2015 when Bliss made his observations. Defendants characterized the November 2014 injunction as a TRO and cited case law holding (in defendants' paraphrase) that a TRO "can only properly last for no more than 10 days provided that a hearing regarding the issuance of a preliminary injunction is scheduled within a short time thereafter." Defendants noted that, in the 12 months since the injunctive order was issued, a hearing on the issuance of a preliminary injunction was neither held nor scheduled.

¶ 15    The court granted defendants leave to file the affirmative defense. Plaintiff then moved to strike the defense.

¶ 16    In January 2016, the trial court issued a written order resolving several pending matters. First, the trial court denied defendants' motion to strike the petition for a rule to show cause. Second, the court granted plaintiff's motion to strike defendants' affirmative defense that the injunction expired prior to the activities in June 2015 that plaintiff alleged were in violation of the injunction. The court rejected defendants' suggestion that the injunctive order was subject to the 10-day limit provided in section 11-101 of the Code (735 ILCS 5/11-101 (West 2014)). The court noted that the 10-day limit applied to a TRO granted without notice, but that here the injunctive order was entered *with* notice. The court also remarked that, in the months since the injunctive order was issued, defendants had not asked for a hearing on whether a preliminary injunction should issue. The court concluded its discussion as follows:

"The court is not finding at this junction [*sic*] that [defendants are] not entitled to a hearing on the Plaintiff's Complaint for Preliminary and Permanent Injunction[,] but based on the statute, previous court rulings and the facts before it, this court is denying [defendants'] [a]ffirmative defense that the TRO entered in the case should be dismissed since it was in effect for more than 10 days."

¶ 17    Third, the trial court found that the activities Bliss observed at the quarry in June 2015, outside the Ordinance's specified hours, constituted "quarrying activities":

"Although there was no evidence presented that there was any mining or blasting being done outside of the time restrictions[,] there was ample evidence of quarrying activities presented to the court for its consideration. The evidence showed that prior to 6 a.m. the Defendants granted access to *** pick-up trucks, semi-trucks and dump trucks into and out of the quarry owned and operated by Defendants and allowing, if not facilitating[,] the use of [front-]end loaders to load aggregate located inside the quarry into the trucks. The evidence also showed that the scale house located on the property was used to weigh these trucks filled with the aggregate prior to exiting the quarry. These activities are 'quarrying activities.' "

¶ 18    In February 2016, the court issued a judgment holding defendants in indirect civil contempt of court for the June 2015 violations. The court imposed a monetary sanction for the contempt. Also on that date, the court scheduled a hearing on plaintiff's complaint. At one point, the court characterized the hearing as one to determine whether a "preliminary and/or permanent injunction" should issue. At a later point, the court said that the hearing would be "on whether or not the defendants should be permanently enjoined from doing their activity."

¶ 19    Defendants subsequently filed a motion to stay proceedings pending resolution of this timely appeal from the adjudication of contempt. The court granted the motion and stayed proceedings.

¶ 20                              II. ANALYSIS

¶ 21    Defendants' two contentions on appeal are: (1) the injunction expired prior to the June 2015 activities that formed the basis for the finding of contempt; and (2) even if the injunction were still in effect, plaintiff failed to prove that defendants' activities violated the terms of the injunction.

¶ 22    We address first plaintiff's assertion that, because defendants did not take an immediate appeal from the injunctive order entered in November 2014, the order became the law of the case and could not be challenged in a later appeal in the proceeding. Plaintiff's contention is based on abrogated authority.

¶ 23    Illinois Supreme Court Rule 307(a) (eff. Feb. 26, 2010) lists several types of interlocutory orders, including those concerning injunctions, from which "[a]n appeal may be taken to the Appellate Court" within 30 days of entry of the interlocutory order. Defendants rely on this court's statement in *Bradford v. Wynstone Property Owners' Ass'n*, 355 Ill. App. 3d 736, 739 (2005), that "[t]he failure to timely appeal from a trial court's order disposing of a motion to grant, deny, modify, dissolve, or refuse to dissolve a TRO renders that order the law of the case from which a later appeal cannot be taken." For this proposition, this court cited two cases from the First District Appellate Court, *Hwang v. Tyler*, 253 Ill. App. 3d 43, 46 (1993), and *Battaglia v. Battaglia*, 231 Ill. App. 3d 607, 615 (1992). Curiously, our decision in *Bradford* failed to mention that this court had previously departed from *Hwang* precisely on whether the failure to take an immediate appeal under Rule 307(a) from an interlocutory order is *res judicata* in an appeal from a later judgment in the case. We said in *Anderson v. Financial Matters, Inc.*, 285 Ill. App. 3d 123, 135 (1996):

    "Here, the language of Rule 307(a)(1) is plain and unambiguous: a party is not required to appeal a Rule 307(a)(1) interlocutory order in order to preserve later review of that order. Rule 307(a)(1) provides only that an appeal 'may' be taken from an interlocutory order that grants a motion to compel arbitration or to stay the proceedings. [Citation.] As a rule of statutory construction, the word 'may' is permissive or discretional as opposed to mandatory. [Citations.] Because Rule 307(a)(1) does not require a party to appeal the interlocutory order, a reviewing court may still review the merits of that order after a final judgment in the case is rendered and appealed from. [Citations.]"

We declined to follow the contrary line of decisions, which included *Hwang*. We remarked that those decisions "neither considered the plain language of Rule 307(a) nor interpreted that language in accordance with accepted rules of statutory construction." *Id.* at 136.

¶ 24    Later, in *Salsitz v. Kreiss*, 311 Ill. App. 3d 590, 593 (2000), the First District noted *Anderson*'s disagreement with *Hwang* but continued to adhere to *Hwang*'s view of Rule 307(a). However, the supreme court in *Salsitz* resolved the inter-district disagreement by adopting *Anderson*'s construction of Rule 307(a). See *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11-12 (2001). The supreme court said:

> "The optional nature of Rule 307 is manifest from the language it employs. Rule 307 plainly states that an appeal 'may' be taken to the appellate court from an interlocutory order of the circuit court. Use of the word 'may' is generally regarded as indicating that action is permissive rather than mandatory. [Citation.] There is no basis for construing the term differently here." *Id.*

¶ 25    While the First District itself later recognized the supreme court's abrogation of *Hwang* (see *Banco Popular North America v. Gizynski*, 2015 IL App (1st) 142871, ¶ 43), our decision in *Bradford* mentioned neither this court's earlier departure from *Hwang* in *Anderson*, nor, more importantly, the supreme court's abrogation of *Hwang* and *Battaglia*. In light of the supreme court's decision in *Salsitz*, we hold that defendants' failure to take an immediate appeal from the injunctive order entered in November 2014 did not render that order the law of the case in this appeal.

¶ 26    We move to defendants' contentions. First, they claim that the injunction entered in November 2014 lapsed before the activities in June 2015 on which the court based the finding of contempt. We disagree.

¶ 27    Under Illinois law, there are three types of injunctive relief: a TRO, a preliminary injunction, and a permanent injunction. *Mister v. A.R.K. Partnership*, 197 Ill. App. 3d 105, 110 (1990). TROs can be entered with notice or without notice. See *Jurco v. Stuart*, 110 Ill. App. 3d 405, 408-09 (1982). Section 11-101 of the Code (735 ILCS 5/11-101 (West 2014)) permits a TRO to issue without notice but subjects such an order to a 10-day limit. Specifically, section 11-101 states that a TRO entered without notice

> "shall expire by its terms within such time after the signing of the order, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the granting of the extension shall be stated in the written order of the court. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he or she does not do so, the court shall dissolve the temporary restraining order." *Id.*

Where a TRO is entered *with* notice, the 10-day rule of section 11-101 does not apply. *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B*, 63 Ill. 2d 514, 521 (1976); *Jurco*, 110 Ill. App. 3d at 409. For that situation, courts have developed the rule that, if the TRO was issued with notice yet without a hearing, then a hearing must be held within a "short time" after expiration of the 10-day period, "so as to prevent the potential significant consequences of only a summary proceeding to exist more than a short period of time." *Jurco*, 110 Ill. App. 3d at 409. "To allow a temporary restraining order of unlimited duration is to

have a preliminary injunction [citation] without giving the one party a fair opportunity to oppose the application and to show[,] if he can[,] why an injunction should not issue." *Id.*

¶ 28    The situation is altogether different, however, where a TRO is issued after both notice *and* a hearing. In that case, the TRO is the functional equivalent of a preliminary injunction. *Mister*, 197 Ill. App. 3d at 110 ("Where *** the defendant is afforded notice and a hearing, there is no practical difference in results between a temporary restraining order and a preliminary injunction." (citing *Kable*, 63 Ill. 2d at 524)); see 735 ILCS 5/11-102 (West 2014) ("No court or judge shall grant a preliminary injunction without previous notice of the time and place of the application having been given the adverse party."). TROs and preliminary injunctions require the same elements of proof (see *County of Du Page v. Gavrilos*, 359 Ill. App. 3d 629, 634 (2005); *Jacob v. C&M Video, Inc.*, 248 Ill. App. 3d 654, 664 (1993)) but have different purposes and, correspondingly, different durational limits. A TRO

> "is a drastic remedy which may issue only in exceptional circumstances *and for a brief duration.* [Citation.] The purpose of a temporary restraining order is to preserve the status quo *until the court can conduct a hearing to determine whether it should grant a preliminary injunction.*" (Emphases added.) *American Federation of State, County & Municipal Employees v. Ryan*, 332 Ill. App. 3d 965, 966 (2002).

By contrast, " '[a] preliminary injunction *** is not necessarily of extremely brief duration since its primary purpose is to provide relief to an injured party and maintain the status quo until a trial on the merits.' " *New York Life Insurance Co. v. Sogol*, 311 Ill. App. 3d 156, 159 (1999) (quoting *Bullard v. Bullard*, 66 Ill. App. 3d 132, 135 (1978)). Thus, another hallmark of a preliminary injunction besides notice and a hearing is the lack of a definite duration for the injunctive relief. See *Peoples Gas Light & Coke Co. v. City of Chicago*, 117 Ill. App. 3d 353, 356 (1983) (citing *Kable*, 63 Ill. 2d at 524).

¶ 29    Defendants believe that the trial court's failure to schedule a hearing in the months following the issuance of the November 2014 injunctive order caused that order to expire. Defendants rely on the mandate in *Jurco* and later cases that where an injunction is issued in a "summary proceeding," *i.e.*, without a hearing, the trial court must schedule a hearing shortly after expiration of the 10-day period following the injunction. *Jurco*, 110 Ill. App. 3d at 409. In this case, however, the injunctive order was issued after both notice *and* a hearing. Thus, the concerns in *Jurco* were satisfied. Though this fact suffices to defeat defendants' narrow contention, we add that the November 2014 order is more appropriately seen as a preliminary injunction than a TRO because it was issued after both notice and a hearing *and* had no durational limit. Notably, the trial court appeared to waver in its view of the order. While the court mostly described the order as a TRO, the court at one point mentioned that the next hearing would be to adjudicate plaintiff's complaint and determine whether a *permanent* injunction should issue. Also, in the months following the issuance of the injunctive order, the court did not take the initiative to schedule a further hearing on injunctive relief, which was consistent with a view of the order as a preliminary injunction designed to maintain the status quo until trial. See *Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969, ¶ 24 (the character and effect of an order is determined by its substance, not its label). Whatever the proper characterization of the order, however, defendant's narrow contention based on *Jurco* fails.

¶ 30    Defendants' second contention on appeal is that their activities did not violate the trial court's November 2014 injunctive order. First, defendants argue that the order was deficient

because it did not particularly describe the conduct enjoined. Defendants cite section 11-101 of the Code (735 ILCS 5/11-101 (West 2014)), which states in relevant part:

"Every order granting an injunction and every restraining order shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Thus, " 'an injunction order cannot support a finding of contempt unless it sets forth with certainty, clarity and conciseness precisely what actions are enjoined.' " *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL 113482, ¶ 66 (quoting *O'Leary v. Allphin*, 64 Ill. 2d 500, 513-14 (1976)).

¶ 31   Defendants are correct that the acts enjoined are not described in the November 2014 memorandum and are at best inferable from the documents (such as Bliss's affidavit) referenced in the memorandum. The trial court, however, cannot fulfill the specificity requirement of section 11-101 by making reference to "the complaint or other document." 735 ILCS 5/11-101 (West 2014).

¶ 32   This does not mean that defendants prevail. The November 2014 memorandum alludes to other pronouncements from the trial court that might potentially have satisfied section 11-101. The court referenced "oral rulings" that it made at the November 13 hearing on plaintiff's motion for injunctive relief. The court stated that the memorandum was meant to explain the basis for those rulings. This suggests that the memorandum was a supplement to, rather than a restatement of, those rulings. A trial court's oral and written pronouncements together constitute the "order granting an injunction" for purposes of section 11-101. See *Televation Telecommunication Systems, Inc. v. Saindon*, 169 Ill. App. 3d 8, 20 (1988) (consulting "[t]he court's oral injunction order, from which the written order was drafted," in determining whether the court described the enjoined actions with adequate specificity). Defendants, however, have not supplied us with a report of proceedings of the November 13 hearing. As the appellants before us, defendants had the duty to provide this court with a sufficient record of the trial court proceedings to support their claims of error. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). We resolve against defendants any doubts arising from an incomplete record. *Id.* at 392. Due to defendants' omission, we do not know the "oral rulings" that the trial court made at the November 13 hearing and, further, whether they satisfied the specificity requirement of section 11-101. See *In re Marriage of Lindsey-Robinson*, 331 Ill. App. 3d 261, 266 (2002) (where the respondent claimed on appeal that the trial court employed faulty reasoning during its oral ruling approving a qualified domestic relations order, *Foutch* applied because the respondent failed to provide a report of proceedings of the hearing). Consequently, we resolve this issue against defendants and reject their claim of error.

¶ 33   Defendants' other challenge to the contempt order assumes, in tension with their first challenge, that the injunctive order is specific enough for us to determine whether it was in fact violated. Here defendants argue that their activities of loading aggregate, as observed by Bliss, did not contravene the terms of the injunctive order. We are unable to resolve this contention. As noted, we do not have a full record of the injunctive order because defendants have failed to provide a report of proceedings of the November 13 hearing where the trial court made "oral rulings" for which it later provided a written rationale. As we must resolve against defendants

any doubts arising from a gap in the record on appeal (see *Foutch*, 99 Ill. 2d at 392), we reject this claim of error, too.

¶ 34                                                    IIII. CONCLUSION
¶ 35          For the foregoing reasons, we affirm the judgment of the circuit court of Boone County.

¶ 36          Affirmed.