*In re* MARRIAGE OF DIANE M. THOMPSON, Petitioner-Appellee, and WILLIAM C. THOMPSON, Respondent-Appellant (The Department of Public Aid *ex rel.* Diane M. Thompson, Intervenor-Appellee).

Second District    No. 2—04—0236

Opinion filed May 20, 2005.

Neal W. Cerne, of Cerne & McSwain, P.C., of Wheaton, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Diane M. Potts, Assistant Attorney General, of counsel), for appellee Department of Public Aid.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

In 1992 and 1995, on behalf of the petitioner, Diane M. Thompson, the intervenor, the Illinois Department of Public Aid, obtained judgments against the respondent, William C. Thompson, for unpaid child support. The judgments were paid via periodic income deductions. In 2004, the trial court granted the intervenor's motion to assess interest and entered a judgment for statutory interest on the child support arrearage judgments. The respondent appeals, arguing that the trial court erred by assessing interest because, under section 505(d) of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/505(d) (West 2002)), the arrearage judgments did not accrue interest. According to the respondent, because the arrearage judgments were support orders under that section, the installment payments thereon were deemed a series of judgments, upon which interest did not accrue until a payment was 30 days late, and that event never occurred. We affirm.

The marriage of the petitioner and the respondent was dissolved in 1978, and the petitioner was granted custody of the couple's two daughters. According to the judgment dissolving the marriage, the respondent was ordered to pay $322.50 per month as child support until 1980, when the monthly payment amount increased to $350. Sometime thereafter, the respondent moved to Florida.

The respondent was subsequently found in contempt of court for failing to pay his child support obligations. In 1992, through interstate child support laws, the intervenor obtained a Florida judgment against the respondent for a $36,940.20 child support arrearage. Pursuant to that judgment, the respondent was ordered to pay the arrearage in monthly installments of $170 via income deductions. In 1995, the Florida court modified the arrearage judgment to $30,990.20, and the respondent's monthly payment and income deduction was changed to $325.

In 2003, before an Illinois court, the respondent moved to terminate the installment payments, arguing that he had paid the 1995 judgment in full. In response, the intervenor moved the court to assess interest on the arrearage judgment in the amount of $22,964.99, which included the remaining principal plus 9% statutory interest since 1992. In the petition, the intervenor alleged that, after the entry of the 1995 judgment in Florida, the respondent moved to Virginia.

The Florida action was closed, and the case was transmitted to Virginia for further collections. As alleged in the intervenor's petition, the Virginia authorities continued to collect arrears from the respondent, and they "began charging statutory interest, as requested by the State of Illinois and required by law." Relying on section 505 of the Dissolution Act (750 ILCS 5/505 (West 2002)) and section 2—1303 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1303 (West 2002)), the intervenor argued that the 1995 judgment drew interest at 9% per annum until it was satisfied.

Disagreeing, the respondent contended that the 1995 judgment was satisfied in October 2002 but, because the Virginia authorities believed that interest was still owed, money continued to be withheld. He pointed out that, to support its argument that statutory interest was mandatory, the intervenor relied in part on an amendment to section 505(b), which became effective on January 1, 2000. The respondent argued, however, that in Illinois, prior to January 1, 2000, whether a court should assess interest on a child support arrearage judgment was discretionary. Therefore, the respondent argued that, by not requesting interest in the 1992 and 1995 judgments setting the child support arrearage, the issue of interest was waived or barred by the doctrines of *res judicata* and merger.

Following a hearing, the parties submitted written closing arguments. The trial court agreed with the intervenor and awarded interest, but it reserved ruling on the interest amount. A hearing was held on the issue of the amount of interest owed. At the hearing, Michelle Metcalf, a public service administrator for the intervenor, testified that she assisted in developing the software program that is used by the intervenor to calculate the interest owed on unpaid child support judgments. Metcalf explained how the interest in this case was calculated. Metcalf verified that the interest calculated was adjusted in July 1995 when the Florida court modified the arrearage judgment. Furthermore, she testified that the interest is not compounded. Rather, the interest reflects simple interest charges on the balance due. Finally, Metcalf testified that she did not believe that the 1992 arrearage judgment included any prejudgment interest. Following the hearing, the trial court entered judgment against the respondent for $21,282.43, calculating the interest at 9% per annum since August 1992. Thereafter, the respondent filed a timely notice of appeal.

On appeal, the respondent argues that the trial court erred in granting the intervenor's petition for statutory interest on his child support arrearage judgment. Specifically, the respondent argues that because the arrearage judgment was ordered to be paid in monthly installments, and because he never missed an installment payment, no

interest accrued on the arrearage judgment. The facts are not disputed and the issue raised in this appeal is one of law. We review questions of law *de novo*. *In re Estate of Burd*, 354 Ill. App. 3d 434, 436 (2004). We note that the issue in this case concerns only postjudgment interest on the arrearage judgment. No argument is made that the petitioner should have been awarded prejudgment interest on the late child support payments. For the following reasons, we disagree with the respondent's contention on appeal and affirm the trial court.

In *Finley v. Finley*, the supreme court held that whether to impose interest on child support judgments lies within the trial court's discretion. *Finley v. Finley*, 81 Ill. 2d 317, 323 (1980). Seven years after *Finley*, the General Assembly amended section 505 of the Dissolution Act and section 12—109 of the Code by enacting Public Act 85—2 (Pub. Act 85—2, §§ 2, 6, eff. May 1, 1987). *Burwell v. Burwell*, 324 Ill. App. 3d 206, 211-12 (2001) (Cook, J., dissenting). The amendment to section 505 of the Dissolution Act added what is now subsection (d), which states, in pertinent part:

> "Each such judgment [of child support] shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced." 750 ILCS 5/505(d) (West 2002).

*Burwell*, 324 Ill. App. 3d at 209. Additionally, the amendment to section 12—109 of the Code provided, in pertinent part, that "[e]very judgment arising by operation of law from a child support order shall bear interest as provided in [s]ection 2—1303 commencing 30 days from the effective date of each such judgment." 735 ILCS 5/12—109 (West 2002); *Burwell*, 324 Ill. App. 3d at 209. According to section 2—1303 of the Code, a judgment recovered in any court draws interest at 9% per annum from the judgment's date until the judgment is satisfied. 735 ILCS 5/2—1303 (West 2002).

Following *Finley* and the 1987 amendments to sections 505 and 12—109, there was a split in authority concerning whether interest on unpaid child support was mandatory or discretionary. In *In re Marriage of Steinberg*, 302 Ill. App. 3d 845 (1998), the court held that section 505(d) was enacted to improve child support enforcement and was a predicate for certain federal funding. *Steinberg*, 302 Ill. App. 3d at 856. Accordingly, the court held that the legislature did not contemplate that section 505(d) would change the exercise of discretion in awarding interest on child support judgments. *Steinberg*, 302 Ill. App. 3d at 856. However, in *Burwell*, the court held that the 1987 amendment to section 12—109 of the Code (735 ILCS 5/12—109 (West 1998)) unequivocally made interest on a child support judgment mandatory. *Burwell*, 324 Ill. App. 3d at 209. Accordingly, the court held that the plaintiff in that case was entitled to interest on unpaid

child support that accrued after the effective date of Public Act 85—2, specifically, May 1, 1987. *Burwell*, 324 Ill. App. 3d at 209-10. The *Burwell* court distinguished *Steinberg* on the basis that the *Steinberg* court did not address section 12—109 of the Code in reaching its decision. *Burwell*, 324 Ill. App. 3d at 210. However, the dissenting justice in *Burwell* stated:

"[Public Act 85—2] was not added with the intent of changing the way interest is awarded in Illinois dissolution judgments. The public act was added to comply with federal law and prevent the loss of large sums of federal funds and to prevent retroactive reduction of child support, especially by courts in other states. [Citation.] The legislative intent in amending section 12—109 of the Code was to add a 30-day grace period, not to change the rule that the award of interest on past-due child support is discretionary. If the legislature had intended to change such a long-standing and sensible rule, it would have done so explicitly." *Burwell*, 324 Ill. App. 3d at 212-13 (Cook, J., dissenting).

Finally, more recently in *In re Marriage of Carrier*, 332 Ill. App. 3d 654 (2002), this court held that the decision to award interest on any dissolution judgment, other than a judgment for child support, is a discretionary matter for the trial court. *Carrier*, 332 Ill. App. 3d at 660. The *Carrier* court further stated that the only exception to the general rule expressed in *Finley* is a judgment awarding child support, which may be taxed with statutory interest under sections 12—109 and 2—1303 of the Code. *Carrier*, 332 Ill. App. 3d at 659-60. As such, the *Carrier* court implied that interest on a child support judgment is mandatory pursuant to sections 12—109 and 2—1303 of the Code.

■ Although there has been some confusion over whether interest on child support judgments is discretionary or mandatory, that confusion has since been resolved. Section 505(b) of the Dissolution Act was amended by the General Assembly in Public Act 91—397, which was approved on July 30, 1999, and became effective January 1, 2000. Pub. Act 91—397, eff. January 1, 2000 (amending 750 ILCS 5/505 (West 2000)). Specifically, Public Act 91—397 added the following to section 505(b) of the Dissolution Act:

"A support obligation, or any portion of a support obligation, which becomes due and remains unpaid for 30 days or more shall accrue simple interest at the rate of 9% per annum." 750 ILCS 5/505(b) (West 2002).

Accordingly, based on the mandatory language of the statute, the parties do not dispute that the petitioner would be entitled to statutory interest on her unpaid child support that had accrued 30 days after the effective date of this addition to the statute.

Nonetheless, we need not determine when interest on unpaid child

support judgments became mandatory. Even if the interest was not mandatory, the trial court clearly had the discretion to award interest on the arrearage judgment. Under the circumstances in the present case, we cannot say that the trial court abused its discretion in awarding this interest. First, it was not improper for the intervenor to bring this suit for interest on the 1992 judgment. See *Feldman v. City of Chicago*, 363 Ill. 247, 254 (1936) (even the acceptance of payment of the principal debt does not preclude a further suit for the interest unpaid). Furthermore, the record reveals that the respondent failed to make most of his child support payments. During these years the petitioner was deprived of child support that was rightfully hers and was forced to be the sole support of the parties' children. Not to award interest to the petitioner would essentially reward the respondent for effectively evading his obligation of support.

■ Moreover, the trial court did not abuse its discretion in awarding interest because the intervenor argued only for postjudgment interest on the 1992 arrearage judgment. Postjudgment interest is clearly mandatory under section 2—1303 of the Code. "Judgments recovered in any court *shall* draw interest at the rate of 9% per annum from the date of the judgment until satisfied \*\*\*." (Emphasis added.) 735 ILCS 5/2—1303 (West 2002); see also *Department of Public Aid ex rel. McGinnis v. McGinnis*, 268 Ill. App. 3d 123, 132 (1994). We note that awarding interest on the entire judgment, pursuant to section 2—1303 of the Code, would have been improper if there had been prejudgment interest included in the 1992 arrearage judgment, because it is improper to award interest on interest. See *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 863 (1997) (accrual of interest on judgments is simple interest and not compound interest). However, it appears that the 1992 arrearage judgment did not include any prejudgment interest. The intervenor's expert, Michelle Metcalf, testified that she did not believe that any prejudgment interest was included in the 1992 arrearage judgment. Additionally, she testified that all the interest calculated was simple interest, not compound interest, and that interest was never charged on interest.

Furthermore, the respondent acknowledges that, had the arrearage judgment been entered as a judgment without a periodic payment schedule, interest could have been assessed on the judgment pursuant to section 2—1303 of the Code. However, relying on section 505(d) of the Dissolution Act, the respondent argues that the arrearage judgment, because it was ordered to be paid in installments, became a support order, of which the installment payments became separate money judgments when due and any interest on the judgment accrued only if a payment was 30 days late. Consequently, the respondent argues that

since he was never late with an installment payment, pursuant to section 505(d) of the Dissolution Act, interest did not accrue. We note that the respondent's argument implies that an arrearage judgment terminates the accrual of interest on the original support obligation and starts a new support obligation. We disagree with the respondent.

Section 505(d) of the Dissolution Act provides as follows:

"(d) Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced." 750 ILCS 5/505(d) (West 2002).

When construing a statute, our goal is to ascertain and give effect to the legislature's intent. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). The best indicator of legislative intent is the plain and ordinary meaning of the language used in the statute. *Paris*, 179 Ill. 2d at 177. The history of section 12—109 of the Code and section 505(d) of the Dissolution Act demonstrates their applicability to current child support obligations only, and not to payments on an arrearage as in the present case. As discussed above, sections 12—109 of the Code and 505 of the Dissolution Act were amended by Public Act 85—2. The 1987 amendment to section 12—109 provided that if a judgment arises by operation of law from a child support order, interest will be assessed as provided in section 2—1303 of the Code, commencing 30 days from the effective date of each such judgment. See 735 ILCS 5/12—109 (West 2002). The simultaneous amendment to section 505 of the Dissolution Act provided that any new or existing support order shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support. 750 ILCS 5/505(d) (West 2002).

■ These amendments indicate that the legislature intended that a past-due child support payment does not have to be reduced to a court-ordered money judgment in order to accrue interest under section 2—1303 of the Code. The 1987 amendment to section 505 indicates that each payment or installment of support is to be considered a series of judgments, arising by operation of law, against the obligor. The amended section 12—109 then indicates that interest automatically accrues on each payment or installment after 30 days from the date the support payment was owed. As such, under the

plain and ordinary meaning of the statutes at issue, the legislature clearly intended that any interest to be awarded on missed support payments should accrue 30 days after the missed payment's original due date. It does not matter if the support obligation is later set forth in a different form through an arrearage judgment.

We acknowledge that an arrearage judgment can technically be construed as a support order. The respondent points out that the legislature has defined the term "order for support" in the Income Withholding for Support Act (750 ILCS 28/1 *et seq.* (West 2002)) as "any order of the court which provides for periodic payment of funds for the support of a child *** and includes any such order which provides for: (1) modification or resumption of, *or payment of arrearage accrued under, a previously existing order*." (Emphasis added.) 750 ILCS 28/15(a)(1) (West 2002). Nonetheless, we find no statutory support for the respondent's contention that if an arrearage judgment is ordered to be paid in installments, the original support obligation ceases to accrue interest unless an installment of the arrearage is 30 days late. On the contrary, the legislature has unambiguously stated, in sections 12—109 of the Code and 505(d) of the Dissolution Act, and most recently in section 505(b) of the Dissolution Act, that interest on unpaid child support begins to accrue 30 days after the missed payment's original due date. See 735 ILCS 5/12—109 (West 2002); 750 ILCS 5/505(b), (d) (West 2002). Accrual of such interest ceases only when the obligor tenders payment of the original unpaid support and any interest accrued to the date of tender. See 735 ILCS 5/12—109, 2—1303 (West 2002).

Furthermore, the respondent's contention leads to an absurd result. According to the respondent, once an arrearage judgment for overdue child support is entered, the interest stops accruing on the original support obligation. Under this framework, the custodial parent is essentially penalized for getting the arrearage judgment because, absent the arrearage judgment, the interest would continue to accrue on the original installments that were overdue. This provides an incentive for a custodial parent to wait as long as possible before pursuing an arrearage judgment so that interest can keep accruing. Such a result is antithetical to attempting to get the noncustodial parent to pay on time, as there is a disincentive to immediately pursue a parent who has not paid. Additionally, section 505(d) was added to the Dissolution Act so that the statute would comply with federal law seeking to increase the effectiveness of the states' child support enforcement programs. See *In re Marriage of Hawking*, 240 Ill. App. 3d 419, 421-22 (1992). The respondent's interpretation of section 505(d) would actually impede the effectiveness of child support enforcement. As such,

the respondent's interpretation leads to an absurd result. Courts should not construe a statute such that it will achieve absurd results. *In re Brandon L.*, 348 Ill. App. 3d 315, 319 (2004).

■ Finally, the fact that the respondent's arrearage judgment was ordered to be paid in monthly installments does not terminate the interest on the original support obligation and make it a new support order within the realm of section 505(d) of the Dissolution Act. An arrearage judgment establishes the amount of child support past due, plus interest, so that all available steps to enforce the child support obligation can be pursued. As the intervenor points out, periodic payments are often ordered in cases involving current child support or the repayment of an arrearage. See 750 ILCS 28/15(a)(1) (West 2002) (defining "order for support" as an order of the court that provides for periodic payment of funds, including an order that provides for payment of arrearage accrued under a previously existing order); see also 750 ILCS 28/15(b) (West 2002) (defining "arrearage" as the total amount of unpaid support obligations as determined by the court and incorporated into an order for support). The purpose of the periodic payments is to enable the custodial parent to serve orders for withholding upon the obligor's employer. See 750 ILCS 28/20 (West 2002) (every order of support must have an income withholding notice prepared and served immediately upon the obligor's employer); see also Pub. Act 93—1061, eff. January 1, 2005 (adding 750 ILCS 28/32) (when current support terminates and the periodic payments continue toward satisfaction of an unpaid arrearage the obligee may serve an income withholding notice upon the obligor's employer). Moreover, it is clear that section 2—1303 of the Code contemplates that a judgment will be paid in installments. The relevant portion of section 2—1303 provides:

> "Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment ***." 735 ILCS 5/2—1303 (West 2002).

As such, the imposition of periodic payments on an arrearage judgment does not terminate the accrual of interest on the original support obligation and start a new support obligation.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BYRNE and KAPALA, JJ., concur.