GEORGE RADOSEVICH, Ex'r of the Estate of Emma Hoemmen, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Roman Catholic Diocese of Springfield, Illinois, Appellee and Cross-Appellant).

Fourth District No. 4—05—0467

Argued April 25, 2006.—Opinion filed September 19, 2006.

Karen D. Burkart and Thomas W. Burkart (argued), both of Burkart Law Offices, of Hamel, for appellant.

Karen L. Kendall and Brad A. Elward (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Gary L. Borah, of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Father George Radosevich, executor of the estate of Emma Hoemmen, deceased, appeals from the May 5, 2005, judgment of the circuit court of Macoupin County, awarding Emma Hoemmen (claimant) reasonable attorney fees and costs pursuant to her section 19(g) application for entry of judgment under the Workers' Compensation Act (Act) (820 ILCS 305/19(g) (West 2002)) and interest pursuant to section 19(n) of the Act (820 ILCS 305/19(n) (West 2002)), arguing (1) the circuit court erred in not awarding claimant attorney fees for the arbitration proceedings and circuit-court proceedings in an amount that is usual and customary and (2) the circuit court erred in failing to award claimant proper interest on the workers' compensation award. The Roman Catholic Diocese of Springfield, Illinois (employer), cross-appeals, arguing the circuit court erred in finding it refused to pay claimant's workers' compensation award. For the reasons that follow, we affirm in part, reverse in part, and remand with directions.

On August 31, 1999, claimant fell and suffered a comminuted humeral neck fracture to her left shoulder with displacement and varus angulation while working as a housekeeper for employer. On September 17, 2002, after a hearing, an arbitrator found claimant sustained injuries that arose out of and in the course of her employment with employer. Employer was ordered to pay claimant (1) temporary total disability (TTD) in the amount of $4,550, representing $37^{1}/_{7}$ weeks during which claimant was temporarily totally

disabled, (2) permanent total disability (PTD) in the amount of $39,897.08, representing 120¹/₇ weeks during which claimant was totally disabled and $332.08 per week thereafter, (3) maintenance in the amount of $34,720 and $120 per week thereafter, and (4) $120 per month for home health services. Employer was also ordered to provide claimant with the Care Link warning system. Neither party sought review of this award.

On October 25, 2002, employer's attorney sent a letter to claimant's attorney requesting social-security-number information for claimant. In addition, employer's attorney reminded claimant's attorney of a discussion where a lump-sum settlement had been proposed. Employer's attorney stated it was her understanding that claimant's attorney would be presenting the idea to claimant and would then respond to the request. Employer's attorney stated she had not heard from claimant's attorney in this regard.

On November 14, 2002, claimant's attorney responded to employer's attorney's letter. Claimant's attorney stated he had spoken with employer's attorney's voice mail or secretary in the past, stating claimant was not interested in a lump-sum-settlement offer, and he again reiterated his client's disinterest in such a settlement at the present time. Claimant's attorney demanded payment of the arbitrator's award within one week.

On December 13, 2002, claimant filed an application for entry of judgment pursuant to section 19(g) of the Act, requesting attorney fees and costs for employer's alleged refusal to pay the arbitration award. On January 2, 2003, a hearing was held on claimant's section 19(g) application. On January 2, 2003, and January 3, 2003, employer issued payment to claimant totaling $84,307.65. On January 10, 2003, employer issued payment to claimant totaling $5,884.16.

On April 30, 2003, Judge Carmody issued a memorandum of decision, finding employer refused to pay the arbitration award. However, claimant's request for $32,310.35 in attorney fees was found to be excessive and unreasonable. Instead, the circuit court awarded claimant $6,000 in attorney fees and $847.20 in interest. The court did not specify whether this award included attorney fees for both the arbitration proceedings and the circuit-court proceedings. The court ordered employer to prepare an order consistent with the court's decision. Employer did not prepare an order as directed by the court.

On May 22, 2003, claimant filed a motion to reconsider. On July 10, 2003, the circuit court denied claimant's motion. In doing so, the court stated that if it were required to award attorney fees in the amount of 20% of the arbitration award, "the court's conclusion would then necessarily be that the delay by respondent in paying the award was not sufficiently egregious to constitute a refusal to pay the award."

On September 3, 2003, claimant filed a rule to show cause regarding employer's failure to submit an order consistent with the circuit court's April 30, 2003, memorandum of decision. On January 8, 2004, the court denied claimant's motion, finding that because of its July 10, 2003, ruling on claimant's motion to reconsider, employer was no longer required to file an order consistent with the court's original April 30, 2003, decision. The court found its July 10, 2003, decision to be a final order for the purposes of appeal. On January 15, 2004, claimant filed a notice of appeal from the court's April 30, 2003, July 10, 2003, and January 8, 2004, decisions. On December 1, 2004, this court dismissed claimant's appeal, holding the circuit court's April 30, 2003, decision was not a final appealable order and remanding the case, directing employer to submit a final order to the circuit court consistent with its April 30, 2003, decision. *Radosevich v. Roman Catholic Diocese of Springfield*, No. 4—04—0038 (December 1, 2004) (unpublished order under Supreme Court Rule 23).

On remand, Judge Mitchell (Judge Carmody had since retired) entered a memorandum of decision, finding Judge Carmody's decision awarding claimant $6,000 in attorney fees was not erroneous and no additional facts justified amending Judge Carmody's decision. Judge Mitchell found section 19(g) of the Act did not mandate an award of 20% attorney fees but rather "reasonable" attorney fees. The court awarded claimant $6,000 in attorney fees and $847.70 in interest pursuant to section 19(n) of the Act. Employer submitted an order consistent with this memorandum of decision, and the court signed it on May 5, 2005. This appeal followed.

■ We first address employer's motion to supplement the record on appeal or, in the alternative, motion to strike, which was ordered taken with the case. Employer seeks to supplement the record with a letter from its insurance company. Supreme Court Rule 329 provides that a party may supplement the record on appeal to include omissions, correct errors, and settle controversies as to whether the record accurately reflects what occurred in the trial court. 134 Ill. 2d R. 329. However, a party may only supplement documents that were actually before the circuit court. *Anderson v. Financial Matters, Inc.*, 285 Ill. App. 3d 123, 130, 672 N.E.2d 1261, 1266 (1996). Employer admits the letter it wishes to submit was not before the circuit court. Therefore, its motion to supplement the record on appeal is denied.

■ In the alternative, employer wishes to strike portions of claimant's brief, which states that employer has not paid interest on the arbitration award. " '[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review.' "

*In re Detention of Powell*, 217 Ill. 2d 123, 132, 839 N.E.2d 1008, 1013 (2005), quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035, 731 N.E.2d 816, 820 (2000). In this case, the portions of claimant's brief of which employer complains do not preclude or hinder our review of this matter. Therefore, we deny employer's motion to strike.

■ We next address employer's cross-appeal. Employer argues the circuit court erred in finding employer refused to pay the arbitration award. We disagree.

As an initial matter, claimant did not file an appellee brief with respect to this issue. Supreme Court Rule 352 prohibits a party from presenting an oral argument unless he or she has filed a brief. 155 Ill. 2d R. 352(a). Further, unless justice so requires, a court of review should neither be compelled to serve as an advocate for the appellee nor be required to search the record for the purpose of sustaining the judgment of the circuit court. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). A reviewing court should decide the merits of the appeal if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief. *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133, 345 N.E.2d at 495. However, if the appellant's brief presents *prima facie* reversible error and the contentions of the brief find support in the record, the circuit court's judgment may be reversed. *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133, 345 N.E.2d at 495.

Section 19(g) of the Act reads in pertinent part as follows:

"Except in the case of a claim against the State of Illinois, either party may present a certified copy of the award of the Arbitrator, or a certified copy of the decision of the Commission when the same has become final, when no proceedings for review are pending, providing for the payment of compensation according to this Act, to the Circuit Court of the county in which such accident occurred or either of the parties are residents, whereupon the court shall enter a judgment in accordance therewith. In a case where the employer refuses to pay compensation according to such final award or such final decision upon which such judgment is entered the court shall in entering judgment thereon, tax as costs against him the reasonable costs and attorneys fees in the arbitration proceedings and in the court entering the judgment for the person in whose favor the judgment is entered, which judgment and costs taxed as therein provided shall, until and unless set aside, have the same effect as though duly entered in an action duly tried and determined by the court, and shall with like effect, be entered and docketed." 820 ILCS 305/19(g) (West 2002).

Attorney fees and costs will not be awarded unless a refusal to pay due compensation is demonstrated. *Ponthieux v. Fernandes*, 278 Ill. App. 3d 104, 109, 662 N.E.2d 169, 172 (1996).

Whether an employer has refused to pay an arbitration award is a question of fact. Factual determinations made by the circuit court will not be overturned unless against the manifest weight of the evidence. See *Armour Swift-Eckrich v. Industrial Comm'n*, 355 Ill. App. 3d 708, 711, 823 N.E.2d 1103, 1105 (2005) (whether the employer acted unreasonably or vexatiously is a question of fact to be determined by the Industrial Commission (Commission) and will not be overturned unless against the manifest weight of the evidence); *Farris v. Industrial Comm'n*, 357 Ill. App. 3d 525, 527, 829 N.E.2d 372, 374 (2005) (wage determination is a factual determination and will be upheld on appeal unless against the manifest weight of the evidence); *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 802, 829 N.E.2d 810, 815 (2005) (whether the claimant's injury arose out of or in the course of employment is a question of fact and will not be overturned unless against the manifest weight of the evidence). For a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *USF Holland, Inc.*, 357 Ill. App. 3d at 802, 829 N.E.2d at 815.

In determining whether there has been a refusal to pay, a circuit court may consider, among other things, (1) whether a demand was made for payment, (2) the length of time that transpired between the date the Commission's decision became final and the filing of the section 19(g) application, (3) the negotiations and communications between the parties that took place during this period, (4) whether the Commission's decision leaves room for good-faith disagreement as to the amount of the payments owed, and (5) whether and when a good-faith offer of settlement was presented. *McGee v. Ractian Construction Co.*, 231 Ill. App. 3d 929, 935, 596 N.E.2d 1261, 1265 (1992).

In this case, the arbitration decision was entered on September 17, 2002. Claimant received her copy of the decision a few days later, and employer received its copy on October 15, 2002. Neither party petitioned for review, and the arbitrator's decision became that of the Commission on November 14, 2002. See 820 ILCS 305/19(b) (West 2002).

On December 13, 2002, claimant filed a section 19(g) application, seeking attorney fees and costs associated with the arbitration hearing and circuit-court proceedings. A hearing was held on claimant's section 19(g) application on January 2, 2003. That same day, after the hearing, claimant received a check from employer in the amount of $34,720, the total amount due for maintenance afforded claimant from

May 17, 2000, through September 5, 2002. On January 3, 2003, claimant received three checks from employer in the amounts of $39,897.08 (total amount due for PTD, representing the period from May 17, 2000, through September 5, 2002), $5,313.28 (payment for 16 weeks of PTD, representing the period from September 5, 2002, through December 1, 2002) and $4,550 (total amount due for TTD, representing the period from August 31, 1999, through May 17, 2000). On January 10, employer issued two checks to claimant in the amounts of $5,220 (total amount due for maintenance, representing the period from September 5, 2002, through January 10, 2003) and $664.16 (payment for PTD, bringing balance for PTD current through January 10, 2003). As of January 10, 2003, $480—payment for home-health-care services from September 5, 2002, through January 2, 2003—and interest on the award remained outstanding. On May 28, 2003, employer paid $1,200 (representing the period from September 5, 2002, through June 30, 2003) for home-health-care services. Evidence was not presented to the circuit court that the interest on the award had been paid.

Employer argues its delay in payment was minimal. Employer asserts (1) it was attempting to obtain information to make payments (*i.e.*, Father Radosevich's social-security number), (2) it was engaged in settlement negotiations, (3) three federal holidays occurred during this period, (4) it never explicitly refused to pay the arbitration award, and (5) it had a good-faith dispute as to what interest was due and owing.

Employer did not pay for home-health-care services, as mandated by the arbitration award, until May 28, 2003, some eight months after it was due. In addition, employer has cited no authority that requires an explicit refusal to pay an award before a claimant can bring a successful section 19(g) application. Such a requirement would bring about absurd results. Section 19(g) of the Act provides compensation for the claimant who is compelled to incur additional expenses as a result of a refusal to pay. See *Evans v. Corporate Services*, 207 Ill. App. 3d 297, 303, 565 N.E.2d 724, 728 (1990). The circuit court's finding of a refusal to pay is not against the manifest weight of the evidence.

■ Claimant argues a finding of a refusal to pay under section 19(g) mandates an award of attorney fees at an amount equal to 20% of the arbitration award, an amount set forth in section 16a(B) of the Act. In establishing or approving attorney fees under the Act, section 16a(B) provides in pertinent part, "[N]o claim of any attorney for services rendered in connection with the securing of compensation for an employee or his dependants, whether secured by agreement, order, award or a judgment in any court shall *exceed* 20% of the amount of

compensation recovered and paid \*\*\*" (emphasis added) (820 ILCS 305/16a(B) (West 2002)); whereas section 19(g) provides for the taxation of *"reasonable* costs and attorney fees" against the party who has refused to pay an award (emphasis added) (820 ILCS 305/19(g) (West 2002)).

"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citations.] To do so, we examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting the law. [Citation.]" *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 242, 848 N.E.2d 1, 37 (2005).

Section 16a(B) dictates that attorney fees shall not *exceed* 20%. This percentage operates as an upper limit, not a mandate. The legislature specifically referred to attorney fees and costs under section 19(g) of the Act as "reasonable" and chose not to use the same language in section 16a. It is a basic rule of statutory construction that, "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d 542, 549-50, 714 N.E.2d 491, 495 (1999). We conclude that the legislature intended "reasonable costs and attorney fees" under section 19(g) to mean something wholly different from the section 16a fee arrangement.

Some reviewing courts have taken a position that the award of attorney fees should be proportionate to the egregiousness of the employer's refusal to pay. In *McGee*, 231 Ill. App. 3d at 936, 596 N.E.2d at 1266, the employer presented claimant a nearly complete tender of $56,369.09, $339.28 short of what was required. The Fourth District noted "[t]o allow plaintiff to recover $16,275.54 in costs and attorney fees because of a dispute over $339.28 would be a harsh and unconscionable result which was not contemplated by the statute." *McGee*, 231 Ill. App. 3d at 936, 596 N.E.2d at 1266. However, the court stated that when an award is not paid promptly, violence is done to the purposes of the Act, and "where an unreasonable failure to pay has been demonstrated, a minor dispute over the calculation of interest may not avoid the imposition of attorney fees and costs." *McGee*, 231 Ill. App. 3d at 936-37, 596 N.E.2d at 1266. In *Kleiboeker v. Industrial Comm'n*, 236 Ill. App. 3d 1020, 1027, 602 N.E.2d 912, 917 (1992), the Fifth District found the award of attorney fees and costs to be proper in light of the employer's refusal to pay the arbitration award but concluded the circuit court's award of $18,467.86 in fees was "far out of proportion to any sanction or penalty that should be awarded against the respondent under these facts." Accordingly, the court remanded the case to the circuit court for a hearing on the reasonable costs and attorney fees incurred with respect to the section

19(g) proceedings only. *Kleiboeker*, 236 Ill. App. 3d at 1027, 602 N.E.2d at 917.

The legislature has seen fit to grant the circuit court discretion in determining the amount of those fees and costs, namely, that they be "reasonable." As previously stated, the question of whether an employer has refused to pay an arbitration award is a question of fact. In addition, whether an employer acted unreasonably or vexatiously is also a question of fact. The decision of the circuit court in awarding claimant $6,000 in attorney fees was not against the manifest weight of the evidence.

■ Finally, claimant argues the circuit court failed to award proper interest on the workers' compensation award. The trial court awarded claimant $384.17 in interest on the main award, which included TTD, PTD, and maintenance; $191.16 in interest on the weekly PTD award; and $272.07 in interest on any remaining monthly amounts, which included home-health-care services and Care Link, for a total interest award of $847.40. Claimant submits interest under section 2—1303 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1303 (West 2004)), at a rate of 9% per annum, should be awarded claimant from September 17, 2002, the date of the arbitrator's award, through May 28, 2003, the date employer paid the arbitration award in full. Employer agrees with the circuit court's calculations and submits section 19(n) interest was properly awarded on the main award and section 2—1303 interest was properly awarded on the weekly PTD award and the remaining monthly amounts.

We note the arbitrator's award of September 17, 2002, set section 19(n) interest at the rate of 1.64% from September 17, 2002, through the date of payment. The aforementioned interest rate applies both to the award and the decision of the Commission.

A claimant is entitled to section 19(n) interest on all awards of arbitrators and decisions of the Commission. 820 ILCS 305/19(n) (West 2004). Interest pursuant to section 19(n) is "drawn from the date of the arbitrator's award on all accrued compensation due the employee through the day prior to the date of payments." 820 ILCS 305/19(n) (West 2004). Cases such as *Ballard v. Industrial Comm'n*, 172 Ill. App. 3d 41, 526 N.E.2d 675 (1988), and *Folks v. Hurlbert's Wholesale Siding & Roofing, Inc.*, 93 Ill. App. 3d 19, 416 N.E.2d 745 (1981), are cited for the proposition that a claimant is not entitled to section 19(n) interest on benefits that accrued after the arbitrator's award. However, upon further review of these cases and the clear language of section 19(n), specifically that "[i]nterest shall be drawn from the date of the arbitrator's award" (820 ILCS 305/19(n) (West 2004)), we decline to follow *Ballard, Folks*, and cases with similar holdings.

A claimant is entitled to section 2—1303 interest if and when the arbitrator's award or Commission's decision becomes an enforceable judgment. When an employer fails or refuses to pay a final award determined by the arbitrator, which becomes the Commission's decision, and no further appeal is taken, a claimant may file a petition pursuant to section 19(g) of the Act to reduce the award to an enforceable judgment in the circuit court for entry of judgment. 820 ILCS 305/19(g) (West 2004). Section 2—1303 provides that judgments shall draw interest at the rate of 9% per annum from the date of judgment, and "[w]hen judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment." 735 ILCS 5/2—1303 (West 2004). Once a claimant implements section 19(g) of the Act, a resulting order of the circuit court is an enforceable judgment, and section 2—1303 interest is properly awarded from the date of the arbitrator's award through the date judgment was entered on that award. In addition, any prospective payments due pursuant to the section 19(g) judgment that are untimely shall also be subject to section 2—1303 interest.

In the case at bar, claimant is entitled to section 19(n) interest on the arbitrator's award of September 17, 2002, which became the Commission's decision on October 16, 2002, through the date of payment, as to all amounts not included in the section 19(g) judgment. When claimant filed the section 19(g) proceeding and the circuit court entered judgment on April 30, 2003, the award became an enforceable judgment and section 2—1303 interest should have been awarded on all "unpaid amounts" from the date of the arbitrator's award, September 17, 2002, through April 30, 2003, the date the circuit court entered judgment on the award. Section 19(n) interest is not also awarded claimant as to amounts found due in the section 19(g) judgment.

Finally, it is important to note section 19(n) interest and section 2—1303 interest do not affect an employer who makes timely payments.

For the foregoing reasons, we affirm that portion of the circuit court's decision finding employer refused to pay the arbitration award within the meaning of section 19(g) of the Act, affirm the court's award of $6,000 in attorney fees, reverse the court's award of section 19(n) interest, and remand with direction that the circuit court assess interest consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

STEIGMANN, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I would affirm the trial court in full.

I note initially that the majority states, "[e]mployer agrees with the circuit court's calculations and submits section 19(n) interest was properly awarded on the main award and section 2—1303 interest was properly awarded on the weekly PTD award and the remaining monthly amounts." 367 Ill. App. 3d at 777. However, employer's brief is confusing. Employer appears to argue section 19(n) interest applies to the main award of TTD, PTD, and caregiver's expenses from the date of the award, September 17, 2002, through the date of payment, January 3, 2003, and section 19(g) 9% interest also accrues on the weekly PTD for that time period as well as on the caregiver's expenses through payment in May 2003. However, at one point in the brief, employer argues somewhat contradictorily that section 19(g) interest cannot accrue on PTD payments because there never was a late payment, which I agree with. Employer also points out, yet apparently concedes this issue, that the method of calculating interest on the total amount owed is incorrect. Interest should be calculated on each individual payment as it becomes due and owing, not on the total amount owed.

I do agree with the majority that, here, no appeal was taken, so the statutory compensation rate applies pursuant to section 19(n) from the date of the award. I, however, disagree with the majority that section 2—1303 interest accrues in a workers' compensation case after a judgment has been entered in circuit court pursuant to section 19(g) of the Act for the time period from the date of entry of judgment back to the date of the arbitrator's award. Instead, section 19(n) interest should accrue prior to entry of judgment in the circuit court because no judgment has been entered until the circuit court enters it.

"Faced with an employer's failure or refusal to pay a final award from which no further appeal is taken, section 19(g) of the Act provides a statutory remedy for a claimant to reduce the award to an enforceable judgment in the circuit court. *Blacke v. Industrial Comm'n*, 268 Ill. App. 3d 26, 28, [644 N.E.2d 23, 24] (1994). *The award itself is not a judgment. Blacke*, 268 Ill. App. 3d at 28, [644 N.E.2d at 24 (opinion of McCullough, J., joined by Rakowski and

Slater, JJ.; Rarick, J., dissenting, joined by Woodward, J.)].''
(Emphasis added.) *Aurora East School District v. Dover*, 363 Ill.
App. 3d 1048, 1054-55, 846 N.E.2d 623, 629 (2006).

Therefore, because a workers' compensation award is not a judgment,
only after the workers' compensation judgment has been entered of
record in the circuit court does section 2—1303 interest apply.

Workers' compensation is a purely statutory remedy governed by
its own legislative rules, the Act. Further, "[p]ost[ ]judgment interest
did not exist at common law and is solely a matter of legislative grace."
B. Miller, *Statutory Post-Judgment Interest: The Effect of Legislative
Changes After Judgment & Suggestions for Construction*, 1994 BYU L.
Rev. 601, 601. Moreover, the majority's author has repeatedly and
recently again acknowledged the general inapplicability of the Code
and supreme court rules to the purely statutory workers' compensa-
tion arena, recognizing the Code and supreme court rules do not apply
where the Act regulates the area or topic. Clearly, here, the Act sets
forth the rate of interest to be applied to awards, not the rate set forth
in the Code of Civil Procedure.

"The Act is a purely statutory remedy. See *Elles v. Industrial
Comm'n*, 375 Ill. 107, 113, 30 N.E.2d 615, 618 (1940). The Code
and supreme court rules do not apply to workers' compensation
proceedings where the Act or the Commission's rules regulate the
area or topic. *Illinois Institute of Technology Research Institute v.
Industrial Comm'n*, 314 Ill. App. 3d 149, 154, 731 N.E.2d 795, 800
(2000). However, they may be relied on for guidance without find-
ing that they are applicable to workers' compensation proceedings.
*Mora v. Industrial Comm'n*, 312 Ill. App. 3d 266, 274, 726 N.E.2d
650, 656 (2000) (discussing amendment of an application for adjust-
ment of claim)." *Preston v. Industrial Comm'n*, 332 Ill. App. 3d
708, 712, 773 N.E.2d 1183, 1188 (2002).

The majority's author has further recognized that a workers'
compensation award is not a judgment.

"Faced with an employer's failure or refusal to pay a final award
determined by an arbitrator or affirmed by a decision of the Com-
mission from which no further appeal is taken, section 19(g) of the
Act provides a statutory remedy for a claimant to reduce the award
to an enforceable judgment in the circuit court. *The award itself is
not a judgment*. A judgment is 'the final consideration and
determination of a court upon matters submitted to it in an action
or proceeding *** [and] is the judicial act of the court.' (*Blakeslee's
Storage Warehouses, Inc. v. City of Chicago* (1938), 369 Ill. 480,
482-83, 17 N.E.2d 1, 3.)" (Emphasis added.) *Blacke v. Industrial
Comm'n*, 268 Ill. App. 3d 26, 28, 644 N.E.2d 23, 24 (1994).

Since the award is not a judgment until recognized in the circuit

court, section 19(n) interest should apply until the date of entry of judgment in circuit court and only then does section 2—1303 interest begin to accrue. The majority author may have recognized the error in applying section 2—1303 interest where the Act provides for section 19(n) interest.

"Other cases have adopted sections of the Code deemed pertinent in areas where the Act has been silent. Courts have allowed the statutory interest provided for under section 2—1303 of the Code (735 ILCS 5/2—1303 (West 1992)) to be imposed against judgments for unpaid compensation awards where the Act omitted reference to the accrual of interest on an unpaid arbitrator's award. See *Proctor Community Hospital v. Industrial Comm'n* (1971), 50 Ill. 2d 7, 9, 276 N.E.2d 342, 343; *Bray v. Industrial Comm'n* (1987), 161 Ill. App. 3d 87, 93, 513 N.E.2d 1045, 1049; *Ballard v. Industrial Comm'n* (1988), 172 Ill. App. 3d 41, 45, 526 N.E.2d 675, 678." *Blacke*, 268 Ill. App. 3d at 28-29, 644 N.E.2d at 24-25.

So apparently prior to 1975 and passage of the section 19(n) interest provision of the Workers' Compensation Act, section 2—1303 interest was applied to a workers' compensation award from the date of the entry of judgment back to the date of the arbitrator's award. However, the Act was clearly amended to provide for section 19(n) interest in 1975 to set forth a specific judgment rate of 6% from the date of arbitration on Industrial Commission awards confirming or increasing an award.

"(n) All decisions of the Industrial Commission confirming or increasing an award entered by an arbitrator of the Commission shall bear interest at the rate of 6% per annum from the date of the arbitrator's award on all compensation accrued. However, the employer or his insurance carrier may tender the payments due under the award to stop the further accrual of interest on such award notwithstanding the prosecution by either party of review, certiorari, appeal to the [s]upreme [c]ourt or other steps to reverse, vacate or modify the award." Pub. Act 79—79, §1, eff. July 1, 1975 (1975 Ill. Laws 224, 273) (amending Ill. Rev. Stat. 1973, ch. 48, par. 138.19).

This section was later amended in 1983, effective 1984, to set a floating rate of interest, clarifying interest does not accrue on awards where the claimant appeals and does not succeed (no change in award or decrease) but permitting interest from the date of arbitration on all payments accrued prior to payment.

"(n) After June 30, 1984, decisions of the Industrial Commission reviewing an award of an arbitrator of the Commission shall draw interest at a rate equal to the yield on indebtedness issued by the United States Government with a 26-week maturity next previ-

ously auctioned on the day on which the decision is filed. Said rate of interest shall be set forth in the [a]rbitrator's [d]ecision. Interest shall be drawn from the date of the arbitrator's award on all accrued compensation due the employee through the day prior to the date of payments. However, when an employee appeals an award of an [a]rbitrator or the Commission, and the appeal results in no change or a decrease in the award, interest shall not further accrue from the date of such appeal." Pub. Act 83—1125, §1, eff. June 30, 1984 (1984 Ill. Laws 212, 256) (amending Ill. Rev. Stat. 1983, ch. 48, par. 138.19 (formerly Ill. Rev. Stat. 1973, ch. 48, par. 138.19)).

The majority and I agree the plain language "[i]nterest shall be drawn from the date of the arbitrator's award on all accrued compensation due the employee through the day prior to the date of payments" (Pub. Act 83—1125, §1, eff. June 30, 1984 (1984 Ill. Laws 212, 250)) indicates that the floating interest rate shall be applied to "all accrued compensation due the employee through the day prior to the date of payment" (Pub. Act 83—1125, §1, eff. June 30, 1984 (1984 Ill. Laws 212, 250)). However, the majority would apply section 2—1303 interest retroactive to the date of the workers' compensation award from the date the circuit court enters judgment. I believe the legislative history supports the statutory priority of section 19(n) interest to an award prior to entry in the circuit court. While, certainly, the Act recognizes in section 19(g) the applicability of section 2—1303 interest.

Unfortunately, no legislative history exists for the statutory amendment setting the 6% interest rate. However, the legislative history available on the floating-interest-rate provision indicates the legislature's intent to secure the current floating interest rate on awards to discourage frivolous appeals.

"What the [a]mendment does is provide for expedited hearing and the one percent above prime rate involved in workers' *** compensation claims.

* * *

*** The second thing that it does is that it allows the interest rates to float. The insurance companies now for the last three years have had it very good. They know that they are going to lose a case, they can simply appeal the decision and invest the money at anywhere from twelve to eighteen percent interest over the last three years. It's a lot more profitable for them to invest the money at fifteen percent or at twelve percent or, today, at nine percent than it is to pay the penalty under current law, which is six percent." 83rd Ill. Gen. Assem., House Proceedings, June 16, 1983, at 27-29 (statements of Representative Tuerk and Representative McPike, respectively).

"Senate Bill 1070 would also increase the interest rate on workers' compensation awards from the current six[-]percent rate to a rate one percent above the prime rate. The low six[-]percent rate is an incentive for insurance companies to appeal the arbitrator's awards. And when the Commission then orders payments, as I said many times a year or so later, the insurance company has made substantially more than the six percent on the money reserved for the award and profits from the difference. The interest rate provided in Senate Bill 1070 will instead provide an incentive to pay awards promptly rather than file frivolous appeals." 83rd Ill. Gen. Assem., House Proceedings, June 27, 1983, at 179-80 (statement of Representative Matijevich).

While this floating rate was passed in the shadows of 20-plus % interest rates versus the Act's prior 6% rate, the legislative debates nonetheless recognize the fact that the floating rate may actually result in lower interest rates than the earlier 6%: "you may actually be lowering the interest rate on Industrial Commission awards." 83rd Ill. Gen. Assem., House Proceedings, June 27, 1983, at 183 (statement of Representative Vinson).

The legislature wanted to fairly compensate the claimant for his losses and discourage frivolous appeals but not grossly penalize the employer. That is what subsections (k), (l), and (m) provide penalties for: unreasonable or vexatious delays resulting in additional compensation of 50%, failure to pay without good and just cause resulting in $10-per-day fines up to $2,500, and wilful violation of the Health and Safety Act (820 ILCS 225/.01 through 23 (West 2002)) resulting in an additional compensation of 25%. 820 ILCS 305/19(k), (l), (m) (West 2002).

The majority cites only section 2—1303 as authority for its proposition that section 2—1303 interest applies from the date of the arbitrator's award to the date of judgment. However, as the employer recognizes here, the cases construing interest in this area are confusing. I agree with the majority that *Ponthieux*, *Ballard*, and *Folks* and their progeny are wrongly decided, yet they are the original authority for awarding section 2—1303 interest on amounts accruing from the date of the arbitrator's decision; moreover, these cases are distinguishable.

*Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 593 N.E.2d 833 (1992), has been cited for the proposition that section 2—1303 interest is properly allowed on arbitration awards. However, *Edwards* is governed by the Uniform Arbitration Act, which does not have the specific statutory scheme as the Workers' Compensation Act, as previously set forth and which preempts section 2—1303 of the Code.

*Ballard* is cited for the proposition that claimant is not entitled to section 19(n) interest on any benefits that accrue after the date of the arbitrator's award, perpetuating the misinterpretation of the language of the Act from *Folks*, 93 Ill. App. 3d 19, 416 N.E.2d 745.

> "[C]laimant is not entitled to interest under section 19(n) on any benefits which accrue after the date of the arbitrator's award. Necessarily, weekly total permanent disability benefits which come due after November 21, 1981, cannot have accrued prior to that date. Therefore, section 19(n) does not apply." *Ballard*, 172 Ill. App. 3d at 44-45, 526 N.E.2d at 678.

As previously noted, the plain language of the Act and the legislative history indicate the legislature clearly intended interest accrue from the date of the arbitrator's award on all accrued compensation due the claimant through the day prior to the day of payments—so long as there is no losing appeal by claimant as here.

Claimant also erroneously relies on *Ponthieux* in arguing for awarding interest under section 2—1303 of the Code. However, in that case, the defendant did not dispute that section 19(n) interest was not payable because the plaintiff's award was a wage-loss differential and there was a prearbitration credit, *e.g.*, section 19(n) did not apply because there was no amount of the arbitrator's award remaining unpaid as of the date of the award to which interest could apply (*Ponthieux*, 278 Ill. App. 3d at 112, 662 N.E.2d at 174), and that cause of action had clearly been filed under section 19(g) and the claimant had obtained the judgment in circuit court to obtain section 2—1303 interest.

In sum, for these reasons, the floating interest rate should be applied through the date of payment unless claimant appeals and loses, which is not the case here since claimant filed no appeal of the underlying decision, or to the date judgment is entered in the circuit court, as here. Section 2—1303 interest should apply only from the date the judgment was entered in the circuit court, April 30, 2003. A workers' compensation award, as previously stated, is not a "judgment recovered in any court" but is an award subject to section 19(n) interest until judgment is entered in circuit court. Even the majority recognizes "a claimant may file a petition pursuant to section 19(g) of the Act to reduce the award to an enforceable judgment in the circuit court" (367 Ill. App. 3d at 778, citing 820 ILCS 305/19(g) (West 2004)). The award is not a judgment until the trial court renders it such. None of the cases, nor the majority, addresses how the section 2—1303 interest provision, which applies to a final judgment, can be used to calculate interest on an award before it is given judgment status. Moreover, contrary to the majority's holding, the section 2—1303 rate

continues to apply until paid, not just from entry of the award to entry of judgment in circuit court, but from entry of judgment in circuit court until paid. "Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time." 735 ILCS 5/2—1303 (West 2002).

I also disagree that section 2—1303 interest should accrue on prospective payments. A section 19(g) judgment can only be rendered on amounts due and owing—not future payments. The only exception to this rule deals with periodic payments on past-due child support. *In re Marriage of Thompson*, 357 Ill. App. 3d 854, 829 N.E.2d 419 (2005) (Second District) (judgment entered for $36,940.20 arrearage with monthly installments ordered of $170). *Thompson* also sets forth the unique status of child-support arrearages created by legislative actions, amendment of the Code, and the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 through 802 (West 2002)).

"When construing a statute, our goal is to ascertain and give effect to the legislature's intent. [Citation.] The best indicator of legislative intent is the plain and ordinary meaning of the language used in the statute. [Citation.] The history of section 12—109 of the Code and section 505(d) of the Dissolution Act demonstrates their applicability to current child[-]support obligations only, and not to payments on an arrearage as in the present case. As discussed above, sections 12—109 of the Code and 505 of the Dissolution Act were amended by Public Act 85—2. The 1987 amendment to section 12—109 provided that if a judgment arises by operation of law from a child[-]support order, interest will be assessed as provided in section 2—1303 of the Code, commencing 30 days from the effective date of each such judgment. [Citation.] The simultaneous amendment to section 505 of the Dissolution Act provided that any new or existing support order shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support. [Citation.]

These amendments indicate that the legislature intended that a past-due child[-]support payment does not have to be reduced to a court-ordered money judgment in order to accrue interest under section 2—1303 of the Code. The 1987 amendment to section 505 indicates that each payment or installment of support is to be considered a series of judgments, arising by operation of law, against the obligor. The amended section 12—109 then indicates that interest automatically accrues on each payment or installment after 30 days from the date the support payment was owed. As such, under the plain and ordinary meaning of the statutes at is-

sue, the legislature clearly intended that any interest to be awarded on missed support payments should accrue 30 days after the missed payment's original due date. It does not matter if the support obligation is later set forth in a different form through an arrearage judgment." *Thompson*, 357 Ill. App. 3d at 860-61, 829 N.E.2d at 424-25.

No such legislative intent exists to permit this court to treat prospective workers' compensation payments as child-support payments are treated—as a judgment. In fact, the legislative intent evident in section 19(n) indicates section 19(n) interest, not section 2—1303 interest, applies to prospective payments. "Interest shall be drawn from the date of the arbitrator's award on all accrued compensation due the employee through the day prior to the date of payments." 820 ILCS 305/19(n) (West 2002).

Finally, I also believe it is important to note section 19(n) interest and section 2—1303 interest *do* in fact affect an employer who has raised a good-faith dispute as to amounts owed, not just employers who wilfully refuse to pay. I also believe claimant has raised a good-faith dispute as to the interest, fees, and cost amounts owed. However, I do incidentally concur with the majority that the trial court is not mandated to award 20% fees but has discretion to award reasonable costs and fees and those may be awarded for the refusal to pay home health care and continue until May 28, 2003. For these reasons, I would affirm the trial court in full.