# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black;">

### *In re Marriage of Westlund*, 2020 IL App (1st) 190837

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF GLORIA WESTLUND, n/k/a Gloria Daugherty, Petitioner-Appellant, and MICHAEL WESTLUND, Respondent-Appellee. |
| District & No. | First District, Fourth Division<br>No. 1-19-0837 |
| Filed | March 31, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-D-4438; the Hon. Karen J. Bowes, Judge, presiding. |
| Judgment | Reversed in part, affirmed in part, and remanded with directions. |
| Counsel on Appeal | Gloria Daugherty, of Elmwood Park, appellant *pro se*.<br><br>No brief filed for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justices Reyes and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    In post-decree litigation after a 2009 dissolution of marriage judgment, the trial court in February 2016 determined that the total amount of the father's child support arrearage, which extended from 2009 through 2014, was $5701.28. After further proceedings, the trial court in 2018 calculated the mandatory statutory interest on the arrearage as beginning to accrue in February 2016.

¶ 2    On appeal, the mother argues that the court should have (1) assessed the mandatory interest on the father's arrearage as beginning from the date of the parties' separation in November 2008 and (2) awarded her child support arrearage for 2015.

¶ 3    For the reasons that follow, we hold that (1) the trial court failed to assess mandatory interest on the father's arrearage beginning 30 days from the first missed payment and (2) the trial court's determination that the father's total arrearage was $5701.28, which amount did not include any child support for 2015, was not an abuse of discretion. Accordingly, we reverse the trial court's interest calculation and affirm its total arrearage amount calculation.[1]

¶ 4                                    I. BACKGROUND

¶ 5    The parties were married in January 2007 and had one child, who was born in October 2007.

¶ 6    On November 5, 2009, the trial court entered a judgment for dissolution of marriage, which incorporated the parties' joint parenting agreement and marital settlement agreement. The parties were awarded joint custody of their child, and the mother was designated as the primary residential parent.

¶ 7    Their marital settlement agreement referenced the father's $1371.13 child support arrearage, which had accrued during the parties' initial separation from November 6, 2008, to April 23, 2009. The agreement provided that the father would pay $522.07 biweekly for unallocated family support beginning on June 18, 2009. After these biweekly payments paid off the father's child support arrearage in February 2010, his child support payments would become 20% of his net income. At the time of the agreement, 20% of the father's net income amounted to $272.07 in biweekly payments.

¶ 8    On June 22, 2010, the parties entered an agreed order that increased the father's child support payment to $313.72 biweekly.

¶ 9    In May 2014, the father filed a petition for indirect civil contempt against the mother, alleging she denied him visitation with their child. The mother filed a petition for rule to show cause against the father, seeking, *inter alia*, disclosure of the father's financial information and an increase in his child support obligation. Thereafter, many proceedings were held on multiple issues, and the trial court issued orders addressing, *inter alia*, visitation, mediation, disclosure of financial documents, insurance, and custody. Relevant to this appeal, in about October 2014, the court ordered the parties "to exchange their calculations from 2009 - 2013 as to what child support was paid compared to what should have been paid for those years."

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 10	In November 2014, the father petitioned the court for an emergency change of temporary and permanent custody. Shortly thereafter, the court appointed the Office of the Public Guardian to be the child representative. In December 2014, the mother petitioned the court to modify temporary and permanent custody.

¶ 11	In January 2015, the mother petitioned the court to hold the father in contempt for failing to pay $7323.29 in child support arrearage for the years 2009 through 2013. The mother asked the court to impose appropriate sanctions on the father, increase his child support obligation retroactively, and order him to pay the $7323.29 arrearage that "should have been paid for the years 2009, 2010, 2011, 2012 and 2013."

¶ 12	In March 2015, the father filed a second emergency petition to change temporary and permanent custody. On May 19, 2015, after a hearing was held, the court found that a substantial change in the circumstances of the child and the parents justified a modification of custody and clear and convincing evidence of the child's best interests supported a temporary change of the residential parent from the mother to father. The child began residing with the father on May 24, 2015, and the father moved the court to terminate his child support obligation and order the mother to pay a reasonable amount of child support. On June 1, 2015, the court temporarily abated the father's child support obligation as of May 20, 2015. The mother filed an emergency motion to reconsider the modification of temporary residential custody. In September 2015, the father petitioned the court for temporary and permanent child support and for an order holding the mother in indirect civil contempt for failing to comply with the divorce agreement regarding income tax exemptions and the court's order requiring the mother to return child support she had received after May 20, 2015.

¶ 13	In September 2015, the court, pursuant to the motion of the child representative, appointed a custody evaluator and ordered the father to engage in certain social services, including random drug testing. In November 2015, the mother filed an emergency motion asking the court to award her temporary and permanent custody, grant her primary residential custody, and order the father to contribute child support.

¶ 14	On November 19, 2015, the trial court found that the evidence did not warrant a change in the child's custody. The court ordered, *inter alia*, that (1) the parties' child support calculations for 2009 and 2010 were reserved and the 2011 calculation needed to be recalculated, (2) the mother was due a $3894.73 total credit for 2012 through 2014, (3) the father was due credits for payments the mother received after May 24, 2015, and for unpaid support the mother owed since September 11, 2015, and (4) the court would consider a credit to the father from the date he took temporary custody of the child in May 2015. The court continued the matter for further hearing on financial issues. In December 2015, the court granted the child representative's emergency motion and ordered the father to immediately engage in drug and alcohol treatment. In January 2016, the mother filed an emergency motion to modify temporary and permanent custody.

¶ 15	In a February 11, 2016, order (hereinafter, the 2016 child support order), the trial court found that the mother's January 2016 motion was not an emergency. The court also imputed income to her for child support purposes because her income disclosure nonsensically represented that she had a deficit every month even though she had no creditors. Furthermore, the court ordered that (1) the mother shall pay $150 monthly child support, (2) the father agreed with the mother's 2009 and 2010 child support calculations, which showed that the mother was due a credit of $3198.08, (3) the mother was due a credit of $674.48 for 2011, (4) the mother,

pursuant to the November 19, 2015, order, was due a total credit of $3894.73 for the years 2012 through 2014, (5) the father's total arrearage, after credits for an evaluation fee, his overpaid child support, and the mother's unpaid child support from September 11, 2015, to January 31, 2016, was $5701.28, and (6) the father's $5701.28 total arrearage amount would be reduced monthly by the mother's $150 monthly child support obligation, which obligation was reserved until the father's arrearage was paid off.

¶ 16    Thereafter, the court held several proceedings and issued orders regarding, *inter alia*, indirect civil contempt petitions alleging noncompliance with prior court orders, petitions to restrict parenting time, recommendations for supervised visitation, counseling and therapy, fee petitions from the child representative, trial case management orders, and motions to impose sanctions. After a trial, the court in May 2017 issued an opinion and allocation of parental responsibilities and parenting plan, which, *inter alia*, awarded the father sole custody and decision-making responsibility over the child. On January 17, 2018, the court set the cause for a status proceeding on child support arrearage and ordered the parties to submit what they believed was owed. On May 11, 2018, the court ordered that it would review the documents tendered by the parties on the child support issue and enter an order at a later date.

¶ 17    On June 18, 2018, the trial court ruled on the parties' motions to revise child support calculations after hearing argument and reviewing all the evidence on child support arrearages, interest and payments. Specifically, the court found that (1) the father had continuous custody of the child before the entry of the 2016 child support order, (2) the 2016 child support order had ruled that the father owed the mother $5701.28 in child support, this arrearage would be reduced at a rate of $150 per month, and the mother's monthly $150 child support obligation to the father was reserved until the father paid off the arrearage, (3) the court's May 2017 opinion, parental responsibilities allocation and parenting plan had referred to the 2016 child support order and made no amendments, and (4) the court had increased the mother's child support obligation to $400 per month in November 2017.

¶ 18    Based on these findings, the court (1) granted the mother, pursuant to section 505(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(b) (West 2018)), interest on the amount of the father's child support arrearage payments, (2) awarded the mother $689.81 interest on the father's $5701.28 arrearage, which was calculated monthly from the date of the February 11, 2016, child support order to this June 18, 2018, order, (3) ruled that the father, after receiving credit for child support due from the mother from February 2016 through June 2018, currently owed the mother only an interest balance of $41.09, which he must pay her directly by June 30, 2018, (4) ruled that no further arrearage existed from the father to the mother, (5) ordered the mother to pay the father $400 per month for child support beginning on July 18, 2018, and (6) denied the father's request for retroactive child support. A spreadsheet attached to the trial court's order showed how the father's $5701.28 arrearage was deducted from the mother's monthly child support obligations from February 2016 through June 2018 to obtain the interest applicable balance, the interest charge per month, and the cumulative total interest.

¶ 19    In her motion to reconsider the June 2018 order, the mother asked the court to (1) calculate the interest on the father's arrearage on a "per judgment" basis rather than "as a total amount owed" and (2) order the father to pay her $2394.94 in child support arrearages for 2015. Specifically, the mother argued that the father "had a total of approximately 171 judgments" from the parties' initial separation in November 2008 through the day he became the residential

parent of their child in May 2015. The mother also argued that the father owed her more money in unpaid child support because he failed to disclose 2015 financial information that most likely would have caused the court to have increased his child support obligation earlier.

¶ 20 In November 2018, the court granted the father 28 days to respond to the mother's motion to reconsider. In January 2019, the mother moved the court for a default judgment based on the father's failure to file a response to her motion. The trial court ordered the father and his attorney to appear before the court at a March 19, 2019, status report. On that date, the parties appeared in court *pro se*, and the court denied the mother's motion for a default judgment. The court also denied, with prejudice, the mother's motion for reconsideration, stating that the June 2018 order detailed the court's findings "and how support was calculated, including interest owed from the [father] to the [mother]."

¶ 21 The mother appealed. The father has not filed a brief on appeal, so this matter is taken for consideration on the record and the mother's *pro se* brief only.

¶ 22 II. ANALYSIS

¶ 23 First, the mother argues that the trial court erroneously calculated the statutory interest on the father's arrearage as starting on February 11, 2016, which was the date the court had ruled that the father's total arrearage, including his credits and based on unpaid support from 2009 through 2014, was $5701.28. According to the mother, the court should have started calculating the interest from November 2008, which she claims represents "the first accrual of unpaid child support." According to the mother's calculations, $10,057.72 is the total interest the father owed her based on his unpaid child support since November 2008. The mother argues that "interest on arrears for child support is non-negotiable" and she never waived her right to that interest.

¶ 24 In *In re Marriage of Rice*, 2011 IL App (1st) 103753, ¶ 44, the court held that mandatory interest under section 505 of the Marriage Act (750 ILCS 5/505 (West 2010)), accrued on the ex-husband's delinquent child support beginning on "the most recent date in which arrearage was calculated by the [trial] court." *Rice*, however, reached this conclusion without any analysis of section 505, so we decline to follow *Rice*.

¶ 25 The interpretation of a statute presents a question of law, which we review *de novo. In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). The primary rule of statutory construction is to give effect to the legislature's intent. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). The best indication of that intent is the statute's language, which should be given its plain and ordinary meaning. *Id.*

¶ 26 Section 505(b) of the Marriage Act states:

"A support obligation, or any portion of a support obligation, which becomes due and remains unpaid as of the end of each month, excluding the child support that was due for that month to the extent that it was not paid in that month, shall accrue simple interest as set forth in Section 12-109 of the Code of Civil Procedure." 750 ILCS 5/505(b) (West 2018).

¶ 27 Section 12-109(b) of the Code of Civil Procedure (Code) states, as pertinent here:

"Every judgment arising by operation of law from a child support order shall bear interest as provided in this subsection. The interest on judgments arising by operation of law from child support orders shall be calculated by applying one-twelfth of the

current statutory interest rate as provided in Section 2-1303 to the unpaid child support balance as of the end of each calendar month." 735 ILCS 5/12-109(b) (West 2018).

¶ 28    Section 2-1303 of the Code states that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." 735 ILCS 5/2-1303 (West 2018).

¶ 29    Section 505(d) of the Marriage Act provides guidance pertaining to how judgments in this context are entered and automatically subject to interest.

"Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order." 750 ILCS 5/505(d) (West 2018).

¶ 30    Interest payments on child support payments became mandatory effective May 1, 1987, when the legislature changed the law by providing that each unpaid child support installment is an actual "judgment" that arises by operation of law and that each such judgment " 'shall bear interest.' " *Illinois Department of Healthcare & Family Services ex rel. Wiszowaty v. Wiszowaty*, 239 Ill. 2d 483, 487-88 (2011).

¶ 31    We conclude that the trial court here erred by calculating interest beginning from February 2016, which was the date the trial court first determined the total amount of the father's arrearage, instead of calculating interest beginning 30 days from the due date of the first unpaid 2009 installment. Interest on past due child support is mandated by the Marriage Act to avoid rewarding a delinquent parent for effectively evading his or her support obligation. *In re Marriage of Thompson*, 357 Ill. App. 3d 854, 859 (2005). In *Thompson*, the court rejected the respondent's argument that an arrearage judgment for overdue child support caused interest to stop accruing on the original support obligation. *Id.* at 861. Instead, the court held that, under section 505(b) of the Marriage Act, "interest on unpaid child support begins to accrue 30 days after the missed payment's original due date." *Id.* ("It does not matter if the support obligation is later set forth in a different form through an arrearage judgment.").

¶ 32    Pursuant to the statutory scheme, the mother is entitled to statutory interest at the rate of $^1/_{12}$ of 9% on the support obligation that became due and remained unpaid at the end of each month, less exclusions, beginning 30 days from the first missed payment until the judgment, *i.e.*, unpaid child support balance, is satisfied. See 750 ILCS 5/505(b), (d) (West 2018); 735 ILCS 5/2-1303, 12-109(b) (West 2018). Consequently, we remand this matter with directions for the trial court to determine the amount of interest on the $5701.28 arrearage that accumulated 30 days from the first missed 2009 payment until the unpaid support balance was satisfied, per the statutory scheme.

¶ 33    Next, the mother argues that the father owes her at least $2394.94 because his child support obligation for 2015 would have been increased if he had disclosed his employment and income information. She contends that he never tendered his 2015 W-2's to her and "[i]n the months that followed various other Motions and Petitions were filed between the parties and those issues address[ed] in court [were] not related to child support or interest." She also states that "it was not and should not have been her responsibility to continuously bring the [father] into court to obtain his W2's and completed tax returns" and "to check his employment and income status" because he was required to provide this information under their marital settlement

agreement and placing that burden on her "would have been inconvenient, expensive and a waste of judicial resources."

¶ 34 Generally, the trial court's order regarding child support and the judicial determination of a child support arrearage are reviewed for an abuse of discretion. *In re Marriage of Paredes*, 371 Ill. App. 3d 647, 650 (2007). The trial court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt its view. *People ex rel. Department of Transportation v. Kotara, L.L.C.*, 379 Ill. App. 3d 276, 286 (2008).

¶ 35 As a threshold matter, we note that the mother's argument in her brief is inarticulate and incoherent. She presents no argument beyond her bare assertion that she is entitled to $2394.94 and cites to no pertinent authority to support her argument. It is well settled that a reviewing court is entitled to have the issues clearly defined with citations to pertinent authority and cohesive arguments presented. *In re M.M.*, 2016 IL 119932, ¶ 30. Points not argued are forfeited. See *id.*; see also Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 36 Furthermore, the appellant has the burden to present a sufficiently complete record to support a claim of error on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In fact, "[f]rom the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Id.* at 391. Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding. Instead, absent a record, "it [is] presumed that the order entered by the trial court [is] in conformity with [the] law and had a sufficient factual basis." *Id.* at 392. Any doubts arising from an incomplete record will be resolved against the appellant. *Id.*

¶ 37 The record before this court consists of only common law documents. According to the court's November 19, 2015, order, 2016 child support order, and June 18, 2018, order, the total amount of the father's child support arrearage was determined by reviewing the parties' submissions that calculated the unpaid child support from 2009 through 2014. These written orders indicate that the court held hearings and the parties presented evidence and submitted calculations concerning the father's arrearage. The parties even agreed regarding the amounts of unpaid child support for several years in question. It is clear from the record that the trial court afforded the parties the opportunity to conduct discovery regarding financial information and submit their calculations and arguments on the issue of unpaid child support, and nothing in the record indicates that the mother raised the issue of any unpaid child support for 2015. We cannot say the trial court's determination of the total arrearage was arbitrary or resulted from an abuse of discretion.

¶ 38 Without a report of proceedings, this court has no knowledge of what arguments the parties made before the court, what evidence the court found credible, or what additional evidence, if any, was presented. Nor do we know if there was any additional reasoning and rationale that provided the basis for the trial court's ruling. Under these circumstances, this court must presume that the trial court acted in conformity with the law and ruled properly after considering the evidence before it. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005); *Foutch*, 99 Ill. 2d at 391-92.

¶ 39                                                    III. CONCLUSION

¶ 40 For the foregoing reasons, we (1) reverse the portion of the trial court's judgment that calculated interest on the arrearage as accruing on the date of the trial court's February 2016

child support order, (2) affirm the portion of the judgment that determined the father's total arrearage amount was $5701.29, and (3) remand with directions to calculate the interest to accrue beginning 30 days from the first 2009 missed payment until the unpaid child support balance was satisfied.

¶ 41      Reversed in part, affirmed in part, and remanded with directions.